## A03A2415. ELEY v. THE STATE.
(596 SE2d 660)

MIKELL, Judge.

After a jury trial, James Austin Eley was found guilty of statutory rape, incest, and two counts of child molestation. On appeal, Eley contests the sufficiency of the evidence and claims that his trial counsel provided ineffective assistance by failing to object to certain testimony. Eley also asserts that the trial court erred by excluding evidence that the victim had previously made a false allegation of

---

[8] See *Six Flags,* supra.
[9] See *Turner,* supra.
[10] *Driggers v. Campbell,* 247 Ga. App. 300, 302 (1) (543 SE2d 787) (2000).
[11] Id.
[12] See id.

sexual misconduct and by refusing to allow a defense witness to testify about the contents of the victim's journal. We affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence.[1] So viewed, the evidence shows that the victim endured an extended period of prolonged sexual abuse and exploitation by Eley, her stepfather. In detail, she recounted that when she was eight or nine years old, Eley asked her to masturbate and use sex toys, including vibrators, dildos and other objects, and would use them on himself and on her; that he began having sexual intercourse with her when she was about 12, even though she told him that it was not right and that she did not like it; that Eley was always telling her she was overweight and was constantly putting her on diets; and that Eley sometimes measured her naked body with a measuring tape before they had sex. The victim also testified that after one of the final acts of intercourse with her stepfather, she wiped herself with a sock and kept the sock until the day she ran away to a friend's home and that she told her friend about Eley's conduct; that she retrieved the sock from her room after reporting the incidents to the police; and that she kept the sock because she felt that no one would believe her. The victim also stated that when she was in the ninth grade, she told a friend about her stepfather's behavior but made him promise not to tell anyone.

The friend in whom she confided testified at trial. He testified that "she told me that her stepfather did some things to her in a sexual way that probably would have been unacceptable." He testified that "I told her to tell somebody," but "she told me that she did not want to tell anybody right now because she was scared." He testified that "she made me promise not to tell anybody or speak to anybody about it," and added that he had kept that promise "until today."

Detective Paul Warner testified that the victim gave him a sock with which she claimed to have "wiped up what was coming out of her vagina." Warner testified that the victim told him about "the penetration of her vagina by what she described as toys, the act of intercourse, the act of oral sodomy, the act of digital penetration," and told him that "she was tired of it going on." Vials of blood drawn from the victim and Eley were sent with the sock to the state crime lab for analysis.

The victim's mother testified that she and Eley used sex toys including vibrators and dildos and that Eley had used a sock to wipe her after they had sexual intercourse. She admitted that Eley was often home alone with the children while she worked her night job as

---

[1] *Peterson v. State*, 253 Ga. App. 390, 391 (1) (559 SE2d 126) (2002).

a dancer at a strip club and that Eley had put her daughter on a diet. The jury found Eley guilty on all counts.

1. Eley contends that the trial court erred by refusing to allow testimony regarding the victim's prior false accusation of sexual misconduct made against another person. He argues that "evidence of prior false accusations is admissible to attack the credibility of the prosecutrix and as substantive evidence tending to prove that the instant offense did not occur."[2]

"With some limited exceptions, the rape shield statute, OCGA § 24-2-3 (b), excludes evidence relating to the past sexual behavior of the complaining witness."[3] When the defendant seeks to introduce such evidence, "the trial court must make a threshold determination outside the presence of the jury that a reasonable probability of falsity exists"[4] as to the victim's accusations of the prior sexual misconduct of others. Absent an abuse of discretion, "a trial court's ruling upon the admissibility of such evidence will not be overturned."[5]

According to Eley's proffer, in 1998, Eley, not the victim, contacted police to report that she had told him that her boyfriend "had gotten her drunk and had sex with her," but she recanted the accusation when she talked to her mother. The State proffered that the victim told Eley she was sexually active with her boyfriend because Eley, who was molesting her at the time, kept telling her that he was preparing her for adulthood and "kept badgering her, are you having sex with anyone, are you having sex with anyone?" The State explained that the girl thought that Eley would finally leave her alone if she told him that she was involved in a relationship and was sexually active. After considering the context and circumstances of the allegation, the trial court determined that the victim's prior accusation was the result of "coercion and duress from her alleged abuser." Under these circumstances, we cannot say that the trial court abused its discretion in excluding such testimony.[6]

2. Eley contends that his counsel was ineffective because he failed to object to the testimony by the State's expert that the epithelial cells found on the sock came from the victim's vaginal area. We disagree.

A forensic serologist, Connie Pickens, conducted scientific testing on the sock with which the victim claimed to have wiped herself

---

[2] (Citations omitted.) *Smith v. State*, 259 Ga. 135, 137 (1) (377 SE2d 158) (1989). Accord *Cox v. State*, 241 Ga. App. 388, 390 (2) (526 SE2d 887) (1999).

[3] (Footnote omitted.) *Abdulkadir v. State*, 264 Ga. App. 805, 806 (2) (592 SE2d 433) (2003).

[4] (Citation and punctuation omitted.) *Kelley v. State*, 233 Ga. App. 244, 251 (5) (503 SE2d 881) (1998).

[5] (Citation omitted.) Id.

[6] See id.

after sexual intercourse with Eley. After performing tests on a large stain, Pickens concluded that "the seminal fluid stain on the sock originated from a man who did not have sperm," which was consistent with Eley's testimony that he had undergone a vasectomy. Pickens also testified that she only detected the victim's DNA on the sock. When the State asked Pickens, "Where did her DNA come from?" Pickens replied:

> Her DNA, the female DNA in most sexual assault cases that we work at the crime lab originate from vaginal epithelial cells. In this case, the stain was seminal in origin. It was on a sock, therefore, my opinion is that the epithelial cells came from the victim's vaginal area. However, there is a chance that some of her epithelial cells could have been on the sock if it were not a clean or new sock.

At the motion for new trial hearing, defense counsel explained that he believed the testimony at issue was admissible as expert opinion. Although Eley now complains that the opinion invaded the province of the jury and should have been objected to, we disagree. "It is well settled that an expert may give an opinion or conclusion even on the ultimate issue when that conclusion is beyond the ken of the average layman."[7] The possible mechanisms by which epithelial cells end up on a sock are beyond the ken of the average layman. Since the evidence at issue was admissible, Eley's trial counsel was not required to object. "Failure to make a meritless objection cannot be evidence of ineffective assistance."[8]

3. Eley claims that the evidence adduced at trial was insufficient to support the verdict. Again, we disagree.

The victim's testimony, alone, was sufficient to support Eley's convictions for incest and child molestation.[9] Under OCGA § 16-6-3 (a), a conviction for statutory rape, however, requires corroboration. The victim's testimony was corroborated by her prior consistent outcry to a friend while she was in the ninth grade and by the scientific findings on the sock.[10]

4. Eley asserts that the trial court's ruling that the best evidence rule precludes Eley's wife from testifying about the contents of the victim's journal was erroneous in light of the victim's testimony that she threw the journal away.

---

[7] (Citation omitted.) *Beecher v. State,* 240 Ga. App. 457, 458 (2) (523 SE2d 54) (1999).

[8] *Hayes v. State,* 262 Ga. 881, 884-885 (3) (c) (426 SE2d 886) (1993).

[9] See *Baker v. State,* 245 Ga. 657, 665-666 (5) (266 SE2d 477) (1980).

[10] See *Long v. State,* 189 Ga. App. 131, 132 (1) (375 SE2d 274) (1988) (victim's prior consistent statement was sufficient evidence of corroboration).

"The 'best evidence' rule applies only when the contents of a writing are in issue."[11] When a writing is lost, destroyed, or inaccessible, the party who desires to offer the contents of such writing, must account for his inability to produce it despite the exercise of due diligence.[12] "The question of diligence is one for sound discretion of the court."[13] "Merely asserting the loss, without showing diligence in attempting to provide the [writing], will not do."[14]

The victim testified that she did not write about Eley's conduct in her journal and that she discarded the journal. Mrs. Eley testified that she read the victim's journal and that it contained "maybe three or four things in the whole thing and talk[ed] mostly about this person said this in school today or whatever. I can't remember the words or anything." The state objected to the testimony as hearsay and asked to see the diary. Outside the presence of the jury, Mrs. Eley testified that she did not actually see the victim discard or destroy the diary.

Pretermitting whether the victim's admission that she discarded the diary satisfied Eley's burden to prove its unavailability, we see no harm in the trial court's refusal to allow further testimony about the contents of the journal. The victim testified that she did not include the assaults in the journal, and Mrs. Eley's testimony about the journal's contents was consistent with the victim's.

Eley argues that his wife's testimony was being offered to contradict the victim's testimony that she detailed his sexual assaults in her journal. But his argument is not supported by the record. At no point did the victim ever testify that she had recorded or chronicled sexual activity in her journal, and as stated earlier, the trial court allowed Mrs. Eley to testify as to her recollection of the contents of the journal. Accordingly, we find no harm in the trial court's refusal to allow further testimony about the contents of the journal. We note, too, that in light of the portion of Mrs. Eley's testimony that was admitted, we cannot discern how further testimony would have been helpful to Eley.

*Judgment affirmed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED MARCH 3, 2004.

*Sharon D. Smith-Knox*, for appellant.

---

[11] (Citation omitted.) *Denson v. State*, 149 Ga. App. 453, 455 (2) (254 SE2d 455) (1979).
[12] See OCGA § 24-5-21.
[13] (Citation and punctuation omitted.) *Mulkey v. State*, 155 Ga. App. 304, 307 (270 SE2d 816) (1980).
[14] (Citation omitted.) Id.

Jeffrey H. Brickman, District Attorney, Barbara B. Conroy, Robert M. Coker, Assistant District Attorneys, for appellee.