707 S.E.2d 122 (2011)
WALKER
v.
The STATE.
No. A10A1937.
Court of Appeals of Georgia.
March 3, 2011.
*124 Kathryn E. Rhodes, for appellant.
J. Gray Conger, District Attorney, Crawford L. Seals, Assistant District Attorney, for appellee.
DILLARD, Judge.
Clyde Walker, Jr., appeals his convictions on four counts of aggravated child molestation and three counts of child molestation. On appeal, he contends that the trial court erred by barring certain evidence under the Rape Shield Statute, preventing defense counsel from impeaching a State witness and commenting on the veracity of this witness, allowing the State to introduce hearsay testimony, and instructing the jury to return a partial verdict. Finding no error, we affirm Walker's convictions.
Viewed in the light most favorable to the verdict,[1] the evidence shows that Walker is the step-grandfather to the victim, S.T. S.T. was molested between the ages of seven and eight, and she was nine years old at the time of trial. She was shuffled between family members after her mother entered a 30-day rehabilitation program but then failed to return for her.[2] S.T. first lived with an aunt *125 and then moved in with Walker and his wife, S.T.'s maternal grandmother. The victim's second day in the Walker household marked the first instance of molestation.
The aunt took S.T. back into her care after the Walkers suggested sending her to live with a relative out of state, and it was at that point S.T. revealed what had transpired in Walker's home when she and Walker were alone togetheri.e., that Walker had showered with S.T., had forced her to orally sodomize him, had orally sodomized her, and had attempted sexual intercourse with her. Additionally, S.T. graphically testified that Walker sometimes ejaculated on her bed sheets at night, and this story was corroborated by tests that revealed numerous instances of seminal fluid containing Walker's DNA on S.T.'s bed sheets. After hearing the foregoing evidence, the jury found Walker guilty of the crimes charged. This appeal follows.
1. Walker first contends that the trial court violated his Sixth Amendment right of confrontation by barring evidence under the Rape Shield Statute[3] that S.T. (1) saw sexually explicit photographs of her mother, (2) overheard a conversation about the taste of semen, and (3) made a prior false allegation of molestation. We address Walker's claims in turn, finding no error or violation of his Sixth Amendment right to confrontation.[4]
(a) Walker sought to present evidence that S.T. possessed pornographic photographs of her mother and had overheard a sexually explicit telephone conversation. According to Walker, the sole purpose of this evidence was to demonstrate the extent of S.T.'s knowledge about sex and "to keep the jury from reaching the unwarranted conclusion that the only possible explanation for [this] knowledge was that she had been exposed to such things" by Walker. The trial court allowed a proffer on both matters outside the jury's presence.
As to the photographs, Walker presented testimony that S.T.'s backpack contained an envelope of ordinary family photographs along with a handful of sexually explicit photographs of S.T.'s mother engaging in oral sex with an unidentified man and rubbing her genitals against his. But there was no testimony that S.T. had ever been observed looking at the photographs or that she had placed the envelope in her backpack. S.T.'s older sister[5] did, however, testify that S.T. told her she had "nasty pictures of her mom" (depicting her mother naked on a bed). At the conclusion of this testimony, Walker sought a ruling from the trial court permitting the introduction of all photographs into evidence, as well as permission to question S.T. on the photographs because of their similarity to her allegations. The State vehemently objected to showing the victim pornographic photographs of her mother, arguing that the photographs depicted generic sex acts that were not factually similar to S.T.'s numerous and detailed allegations. The trial court agreed and ruled that the evidence was inadmissible.
As to the sexually explicit conversation, Walker proffered evidence that the victim was sitting within three feet of her mother during a telephone conversation in which the mother described the taste of semen. Walker wished to present the testimony of the person to whom the mother was speaking and that of a great-aunt who witnessed the *126 incident. However, there was no evidence that S.T.'s mother also discussed the appearance of semen, something S.T. could also describe in detail. And after hearing this evidence, the trial court ruled that Walker could not question S.T. about this incident because there was no proof that S.T. actually heard or, at the age of seven, understood the subject matter involved in the conversation, which occurred up to a year prior to her allegations being made.
Regarding both the sexually explicit photographs and conversation, we agree with the trial court's conclusion and find no error in its decision to bar this evidence from being introduced at trial. Indeed, in the absence of a showing of relevance,[6] evidence of a child's exposure to sexually explicit material is clearly inadmissible.[7] In this respect, we have previously held that a trial court did not abuse its discretion "in ruling that any knowledge acquired by [a child victim] through observation of his mother performing oral sex on a man, and through possession of certain magazines owned by his father, was not relevant" to a jury's consideration of whether the defendant sexually molested the child.[8] And here, any alleged exposure to the sexually explicit photographs of her mother or her mother's sexually explicit conversation was wholly irrelevant to the issue of whether Walker committed the acts alleged by S.T., and was thus properly excluded by the trial court.[9]
(b) Walker also sought to present evidence that S.T. once falsely alleged that a man in a bowling alley had molested her. The trial court allowed a proffer outside the presence of the jury, and Walker presented testimony from S.T.'s grandmother and sister that, after being told she could not attend a slumber party, S.T. stated that "she should have said something about the guy at the bowling alley doing something to her." When questioned about the statement, S.T. allegedly responded that "he really didn't do anything to her" and that she "just wanted to go home to her mom." Walker sought to introduce this testimony "to show the alleged victim's lack of credibility."
The trial court ruled that this evidence was inadmissible as a collateral matter that would confuse the issues and lead to a trial within the trial. The court viewed in camera a forensic videotaped interview with S.T. regarding the man at the bowling alley and determined, after watching the interview, that Walker's evidence did not rise to the level of establishing that S.T.'s claimthat the man had touched and rubbed her ankles and tried to open her legs to look up her skirtwas false. We agree with the lower court that Walker's evidence did not establish by reasonable probability that this prior allegation was in fact false.[10]
While the Rape Shield Statute does not prohibit the introduction of evidence that a victim has made prior false accusations of sexual misconduct,[11] a trial court must, before admitting such evidence, "make a threshold determination outside the presence of the jury that a reasonable probability of falsity exists."[12] The trial court did not find *127 a reasonable probability of falsity, and we will not disturb this finding absent an abuse of discretion.[13] And while the trial court was faced with conflicting evidence as to the truth or falsity of S.T.'s prior allegation, Walker has not demonstrated that the trial court abused its discretion in concluding that Walker's proffered evidence did not establish a reasonable probability of falsity.[14]
2. Walker next contends that the trial court inhibited his ability to impeach S.T.'s aunt, one of the State's chief witnesses, with allegations that she physically abused S.T. through severe beatings. Additionally, Walker alleges that the trial court bolstered the credibility of the aunt in violation of OCGA § 17-8-57.
(a) First, Walker claims that the trial court "banned" him from impeaching S.T.'s aunt by sustaining objections made by the State. The State anticipated that Walker would try to impeach the aunt by alleging that S.T. had moved in with the Walkers after the aunt "beat the hell out of her." Accordingly, the State inquired of the aunt on direct examination whether this was true, and she denied abusing the child.[15] On cross-examination of the aunt, defense counsel's only attempt at impeachment of the aunt surrounded an untruthful statement that she made in her son's application to attend private school; and counsel did not question the aunt about any alleged beatings of the victim.
Later, on direct examination of the victim's grandmother, defense counsel asked her to describe the circumstances surrounding S.T.'s move to her home, and she responded as follows:
"... [S.T.] was just becoming too much for [the aunt]. [The aunt] would come to our house a lot after she picked up [S.T.], and [S.T.] was in trouble every day. I mean, every day [S.T.] was getting a spanking. And one day ... [the aunt] went back there, [the aunt] was spanking [S.T.] over something [S.T.] had done at school and"
The State immediately objected to this line of questioning as concerning subject matter that its witness[16] had not been questioned about on direct examination and as a reference to specific bad acts "about whether [S.T.] was in trouble." At no point did Walker's counsel respond to this objection or explain that he was attempting to impeach S.T.'s aunt. The only explanation offered by defense counsel was that he was "just trying to get [the grandmother] to tell us how [S.T.] came to be living with her and when." The trial judge ruled that it would be sufficient for the grandmother to say that S.T. had come to live with her "because she was having problems" and also sustained the State's objection as to specific bad acts.
When the State cross-examined the grandmother, she was asked why she did not care about S.T.'s allegations of sexual abuse, and she responded as follows: "I care very much for my granddaughter. I love her. She was beat black and blue by [the aunt]." The State then objected to the grandmother's *128 answer as unresponsive, and the trial court sustained the objection, saying, "Strike any reference to [S.T.] being beaten black and blue by anyone else as unresponsive to the question." Walker's counsel did not challenge the court's ruling or attempt to make a proffer of testimony.
Finally, during direct examination of S.T.'s great-aunt, Walker's counsel inquired as to whether she noticed anything peculiar when she visited S.T. in the hospital after the molestation allegations were made. The great-aunt responded that she noticed a bruise on S.T.'s leg and asked the doctor to "make note of [it]" because of "[the aunt's] history of beating [S.T.]." The State objected, and the trial court sustained the objection, instructing the jury to "disregard any reference to an allegation that [the aunt] beat [S.T.]." Once again, Walker's counsel did not challenge the court's ruling or make a proffer of the evidence in support of this testimony. Following cross-examination, the trial court held a bench conference and instructed defense counsel that he would be held in contempt if another witness "blurt[ed] out anything about [the aunt] beating" the victim.
In a brief supporting a motion for new trial, Walker explained that he "wanted to use this evidence to show that [the aunt] corroborated [S.T.'s] testimony to hide [the aunt's] mistreatment of [S.T.]." However, by acquiescing in (and failing to challenge) the trial court's rulings on the State's objections, Walker waived the right to complain on appeal about the exclusion of this testimony.[17] Moreover, if Walker truly intended to use evidence of the alleged beatings to show that the aunt's testimony was biased as a means of self-preservation,[18] the trial judge properly limited the testimony in question because Walker's counsel failed to lay a proper foundation for this testimony.[19] Indeed, before a witness is impeached to prove bias through the testimony of other witnesses, a foundation "must first be laid by cross-examining the witness sought to be impeached as to his feelings toward the party."[20] And as noted supra, defense counsel did not cross-examine S.T.'s aunt about the alleged beatings that he now claims were so vital to impeachment.[21] Additionally, if Walker intended to use this testimony to contradict the aunt's statement that she did not "beat the hell" out of S.T., the trial court had discretion in limiting testimony on this matter.[22] Thus, the trial court did not err by restricting the foregoing testimony.[23]
(b) Second, Walker contends that the trial court violated OCGA § 17-8-57[24] by *129 bolstering the aunt's credibility. Again, because Walker did not object or move for a mistrial on this ground, "his complaint regarding the ... [alleged] violation has been waived."[25] However, the plain-error doctrine applies to this issue,[26] and as such, we review the trial court's commentary to determine whether it "is so clearly erroneous as to result in a likelihood of a grave miscarriage of justice or which so seriously affects the fairness, integrity or public reputation of a judicial proceeding."[27]
Specifically, Walker characterizes the trial court's instruction for the jury to disregard any reference to the aunt beating S.T. and to strike "any reference to [S.T.] being beaten black and blue by anyone else" as bolstering the credibility of the State's witness. We disagree. As detailed supra, these comments were made when ruling on objections by the State, and "[s]ustaining or overruling an objection is not a violation of OCGA § 17-8-57."[28] Additionally, "remarks of a judge assigning a reason for his ruling are neither an expression of opinion nor a comment on the evidence."[29] Thus, because this commentary was not improper, Walker has failed to show plain error.[30]
3. Walker further argues that the trial court erred in admitting hearsay testimony without requiring the State to establish the necessity of the testimony or particular guarantees of trustworthiness. Specifically, Walker takes issue with a statement made by S.T.'s aunt who testified that she had in the past informed the grandmother about allegations of sexual assault made by a sister who was deceased at the time of trial. According to Walker, this statement was used against S.T.'s grandmother, one of his chief witnesses, "to assassinate her character by bootstrapping such hearsay testimony ... without any way for the defense to cross examine such an allegation." However, this enumeration of error is without merit because the complained-of testimony was not hearsay.[31]
An out-of-court statement is original evidence, not hearsay, when used as proof that such a statement was made and not offered as evidence to prove the truth of the matter asserted.[32] And here, the aunt's testimony was not presented to establish the truth of the matter assertedi.e., that her sister had been sexually assaulted. Rather, *130 on cross-examination of the grandmother, the State asked if it was true that she had a history of tolerating the abuse of young children, including her own daughters. Following an objection by the defense, the State then elicited testimony that the grandmother was aware of allegations by all three of her daughters (the third being S.T.'s own mother) that they were molested by the grandmother's brothers, along with a denial that she did not care about the allegations.
Following the grandmother's testimony, the State questioned the aunt in rebuttal to testify about the allegations made by her sisters and herself and about the grandmother's subsequent reaction (or lack thereof) to the allegations of abuse. This testimony revealed that despite the grandmother's knowledge of her daughters' allegations, she was still in contact with her brothers and had even made one a pallbearer in her deceased daughter's funeral. Thus, this testimony was clearly used to attack the credibility of the grandmother, one of Walker's key witnesses, by showing her bias against S.T. and explaining her conduct.[33] Because it was not used to establish the truth of the matter asserted, the testimony by the aunt was not hearsay and was properly admitted over Walker's objections.[34]
4. Finally, Walker contends that the trial court committed error when, after learning that the jury had reached a verdict on some counts, it instructed the foreperson as follows:
I understand you want to recess for the night, but this is what I'm going to ask you to do. Go back as foreperson, poll the jury. And if, in fact, you have reached a final judgment on those counts, write it on a separate sheet of paper, ["W]e the jury, find count, whatever it is, count one, count five, six, eight, whatever, guilty or not guilty.["] Sign it, date it, fold it over. But only after you talk to the jurors and you are fixed in that decision. .... And then come back and I'll give you further instructions about recessing for the night.
After retiring to deliberate on these instructions, the jury surprised the court by returning with a guilty verdict on all counts. While Walker's counsel objected to the court's instruction when he believed only a partial verdict would be returned (contending that it was premature because the jury had not indicated that it was deadlocked), he did not move for a mistrial or object after learning that the jury had in fact returned with a verdict on all counts. Defense counsel only moved for a mistrial following the reading of the guilty verdict on all counts. On appeal, Walker now argues that the instruction was premature, improper, unduly suggestive, and that it pressured the jurors to reach a decision. He further contends that "[s]uch an instruction should not take the place of an [Allen charge[35]] or be done before it is determined that the jurors are deadlocked or before it is determined that they have had enough time to deliberate."
To the extent that this issue has not been waived by Walker's failure to make a new objection upon learning that the jury had reached a full verdict,[36] we find no merit to his contention and do not believe the court's instruction was erroneous.[37] Indeed, this situation *131 is factually similar to that involved in Disby v. State,[38] in which the Supreme Court of Georgia held that it was not improper for the trial judge, upon learning that the jury had reached a verdict on one count, "to let the jury publish its verdict as to [that count] and finish its deliberations on [the other count] the following day."[39] In the case sub judice, the judge was prepared to accept a partial verdict for the counts on which the jury agreed and planned to allow continued deliberation on the remaining counts the following day. Additionally, the judge told counsel that he was not even going to look at the jury's decision or declare a verdict on the unanimous counts that evening. That the jury decided to continue in its deliberations and reached a verdict on all counts does not mean that the trial judge's instruction was premature, improper, or unduly suggestive, because the judge's actions "did not improperly curtail the jury's consideration" of the remaining counts.[40]
Judgment affirmed.
BARNES, P.J., and BLACKWELL, J., concur.
NOTES
[1] See, e.g., Gresham v. State, 281 Ga.App. 116, 117, 635 S.E.2d 316 (2006) ("On appeal from a criminal conviction, the evidence must be construed in a light most favorable to the verdict, and [the defendant] no longer enjoys a presumption of innocence." (punctuation omitted)); Warren v. State, 265 Ga.App. 109, 110, 592 S.E.2d 879 (2004) (same).
[2] The victim was living with her paternal grandmother at the time of trial.
[3] See OCGA § 24-2-3(a). The Rape Shield Statute provides that in prosecutions for aggravated child molestation, "evidence relating to the past sexual behavior of the [victim] shall not be admissible, either as direct evidence or on cross-examination of the [victim] or other witnesses, except as provided in this Code section." Id. Evidence of past sexual behavior includes the victim's "marital history, mode of dress, general reputation for promiscuity, nonchastity, or sexual mores contrary to the community standards." Id.
[4] See Harris v. State, 257 Ga. 666, 667(1)(a), 362 S.E.2d 211 (1987) ("An important state interest that the right to confrontation must accommodate is an interest that furthers the truth-finding process. The Georgia Rape Shield Statute ... assists the truth-seeking process by preventing the jury from becoming inflamed or impassioned and deciding the case on irrelevant and prejudicial evidence." (citations omitted)); Green v. State, 221 Ga.App. 436, 436-37, 472 S.E.2d 1 (1996) (same).
[5] S.T.'s sister lived with Walker and S.T.'s grandmother since birth and believed they were her biological parents until S.T. made the allegations of molestation.
[6] See Payne v. State, 267 Ga.App. 498, 501(1), 600 S.E.2d 422 (2004) (child's exposure to pornography irrelevant to show nonchastity or preoccupation with sex but relevant as reason for child's knowledge when child recanted allegationsthough court said defense could show knowledge without specifying pornography as mechanism).
[7] See Montgomery v. State, 277 Ga.App. 142, 142-44, 625 S.E.2d 529 (2006) (child's potential exposure to brother's collection of pornography held irrelevant to alleged molestation); Callahan v. State, 256 Ga.App. 482, 485-86(2)(c), 568 S.E.2d 780 (2002) (child's exposure to a household with open sexual activity and observation of such held irrelevant); Cantrell v. State, 225 Ga. App. 680, 680-81, 484 S.E.2d 751 (1997) (child's exposure to mother's sexual activity and father's pornographic magazines held irrelevant to claims of molestation).
[8] Cantrell, 225 Ga.App. at 681, 484 S.E.2d 751.
[9] See id.
[10] See Osborne v. State, 291 Ga.App. 711, 713(2), 662 S.E.2d 792 (2008).
[11] See OCGA § 24-2-3; see also Roberts v. State, 286 Ga.App. 346, 347, 648 S.E.2d 783 (2007); Tyson v. State, 232 Ga.App. 732, 733(2), 503 S.E.2d 640 (1998).
[12] Roberts, 286 Ga.App. at 347, 648 S.E.2d 783 (punctuation omitted); see also Tyson, 232 Ga. App. at 733(2), 503 S.E.2d 640. Reasonable probability means "a probability sufficient to undermine confidence in the outcome." Roberts, 286 Ga.App. at 347, 648 S.E.2d 783 (punctuation omitted).
[13] See Roberts, 286 Ga.App. at 347, 648 S.E.2d 783 ("A trial court's ruling on this issue will not be overturned on appeal absent an abuse of discretion."); Eley v. State, 266 Ga.App. 45, 47(1), 596 S.E.2d 660 (2004) ("Absent an abuse of discretion, a trial court's ruling upon the admissibility of such evidence will not be overturned." (punctuation omitted)).
[14] See Roberts, 286 Ga.App. at 348, 648 S.E.2d 783 (holding that conflicts in evidence and issues of credibility were issues for the trial court to consider in making its ruling on the probability of falsity, and determinations on credibility are reviewed for clear error). We note that the lack of charges or a DFCS hearing in the prior incident does not require a different outcome because "[t]his court has held a number of times that the fact that an accusation is not prosecuted is insufficient to establish its falsity." See Williams v. State, 266 Ga.App. 578, 581(1), 597 S.E.2d 621 (2004) (holding further that the lack of prosecution "indicates only that insufficient evidence existed at the time for a charge to be brought").
[15] The State also questioned S.T. about the forms of punishment used by her aunt, and S.T. admitted that her aunt sometimes spanked her with a belt, but she said that only her grandmother, Mrs. Walker, would spank her with a switch.
[16] The State did not specify whether this meant S.T. or her aunt.
[17] See, e.g., Lee v. State, 306 Ga.App. 144, 147-48(3), 701 S.E.2d 582 (2010); Mote v. State, 297 Ga.App. 13, 16(2), 676 S.E.2d 379 (2009).
[18] See Noellien v. State, 298 Ga.App. 47, 50(3)(a)(i), 679 S.E.2d 75 (2009) ("[B]ias must be specific to the case, arising from a self-interest or self-preservation motive that could be reasonably inferred to cause testimony to be shaded or distorted." (punctuation omitted)).
[19] See Reese v. State, 252 Ga.App. 650, 654(6), 556 S.E.2d 150 (2001) ("No foundation was laid for ... impeachment on the question of ... bias. The trial court did not err in sustaining the State's objection[.]").
[20] Id. (punctuation omitted).
[21] We note that contrary to Walker's contention that the defense was "banned from impeaching" the aunt, Walker impeached her by introducing her son's application to private school and by eliciting testimony that she would cut S.T.'s hair as a form of punishment. Walker also fails to mention that at least one reference to a beating was not objected to by the State or ruled inadmissible by the court, that there was testimony that S.T. had bruises on her body and was sometimes spanked with a belt, and that his counsel made reference to the alleged beatings in opening statement.
[22] See Barngrover v. Hins, 289 Ga.App. 410, 412(1), 657 S.E.2d 14 (2008) (holding that court did not abuse its discretion by allowing limited investigation into indirectly material information); Carswell v. State, 263 Ga.App. 833, 834(2), 589 S.E.2d 605 (2003) ("[W]hile a witness may not be impeached on a wholly immaterial matter, he may be impeached on collateral issues that are not indirectly material to the issues involved in the case."); see also OCGA § 24-9-82 ("A witness may be impeached by disproving the facts testified to by him.").
[23] See Barngrover, 289 Ga.App. at 412(1); 657 S.E.2d 14; Reese, 252 Ga.App. at 654(6), 556 S.E.2d 150.
[24] Under OCGA § 17-8-57, "[i]t is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused."
[25] Mathis v. State, 276 Ga.App. 205, 206, 622 S.E.2d 857 (2005).
[26] See id. (explaining that the plain-error doctrine applies on the issue of OCGA § 17-8-57 violations in instances of waiver); see also Adams v. State, 282 Ga.App. 819, 823(4), 640 S.E.2d 329 (2006) ("A claim of error alleging a violation of OCGA § 17-8-57 is not waived by an attorney's failure to object at trial, if such violation constitutes plain error." (punctuation omitted)); Archie v. State, 248 Ga.App. 56, 57(1), 545 S.E.2d 179 (2001) (same).
[27] Archie, 248 Ga.App. at 58(1), 545 S.E.2d 179 (punctuation omitted); see also Mathis, 276 Ga. App. at 206, 622 S.E.2d 857 ("[W]e review the commentary to determine whether it amounted to an obvious violation ..., meaning that it seriously affected the fairness, integrity, or public reputation of these judicial proceedings.").
[28] Mathis, 276 Ga.App. at 207, 622 S.E.2d 857.
[29] Id. (punctuation omitted); see also Johnson v. State, 246 Ga. 126, 128(V), 269 S.E.2d 18 (1980); Cochran v. State, 136 Ga.App. 125, 127(3), 220 S.E.2d 477 (1975).
[30] Additionally, we note that when charging the jury, the trial court instructed them that nothing it said during the trial was intended as a comment on credibility.
[31] See OCGA § 24-3-2 ("When, in a legal investigation, information, conversations, letters and replies, and similar evidence are facts to explain conduct and ascertain motives, they shall be admitted in evidence not as hearsay but as original evidence."); Walker v. State, 187 Ga.App. 631, 633(1), 371 S.E.2d 199 (1988) ("Since the challenged testimony was not hearsay, the trial court did not err in allowing same into evidence."). Compare Washington v. State, 251 Ga.App. 206, 210(2), 553 S.E.2d 855 (2001) (holding that testimony was properly excluded as hearsay when it "was clearly offered to prove the truth of the matter asserted").
[32] See Walker, 187 Ga.App. at 633(1), 371 S.E.2d 199; see also Edgeworth v. Edgeworth, 239 Ga. 811, 812, 239 S.E.2d 16 (1977) ("[T]estimony elicited to establish the fact that something was said, not the veracity of its content, is admissible to explain conduct and ascertain motives, not as hearsay, but as original evidence."); Bull Street Church of Christ v. Jensen, 233 Ga.App. 96, 101-02(2), 504 S.E.2d 1 (1998) (holding that testimony regarding an out-of-court statement was direct evidence of notice, not inadmissible hearsay).
[33] See OCGA § 24-3-2 (prior statements are not hearsay when used as facts to explain conduct).
[34] See id.
[35] An Allen charge is given by the trial court when the jury in a criminal trial indicates that it is deadlocked, encouraging the jurors to re-examine their opinions in continued deliberation and to attempt to reach a unanimous verdict. See Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896); see generally Humphreys v. State, 287 Ga. 63, 79-82(9), 694 S.E.2d 316 (2010); Wells v. State, 297 Ga.App. 153, 160-61(2), 676 S.E.2d 821 (2009).
[36] See Disby v. State, 238 Ga. 178, 179(3), 231 S.E.2d 763 (1977). Cf. Sumlin v. State, 283 Ga. 264, 266(2), 658 S.E.2d 596 (2008) (failure to renew motion for mistrial until after return of verdict waived review of improper closing argument); Pearson v. State, 277 Ga. 813, 816(4), 596 S.E.2d 582 (2004) ("A party cannot during the trial ignore what he thinks to be an injustice, take his chance on a favorable verdict, and complain later." (punctuation omitted)).
[37] See Bankston v. State, 169 Ga.App. 955, 956-57(2), 315 S.E.2d 671 (1984) ("The decision of whether to give a jury in disagreement the `Allen' charge, including deciding the length of time a jury may be allowed or required to deliberate before the charge is given, generally lies within the discretion of the trial court and will not be disturbed on appeal unless there is a manifest abuse of discretion.").
[38] 238 Ga. 178, 231 S.E.2d 763 (1977).
[39] Id. at 179-80(3), 231 S.E.2d 763.
[40] Byrd v. State, 277 Ga. 554, 558(3), 592 S.E.2d 421 (2004); see Dean v. State, 205 Ga.App. 512, 512-13, 422 S.E.2d 569 (1992) (holding that judge's comment to jury that they had until 5:00 p.m. to deliberate did not create impression that jury was required to reach a verdict by a certain time).