In the Supreme Court of Georgia

Decided:   June 2, 2014

S14A0190. JARNIGAN v. THE STATE.
S14A0191. DAVIS v. THE STATE.

BLACKWELL, Justice.

Deonshowna Jarnigan and Grant Alexander Davis were tried together by a DeKalb County jury and convicted of the murder of Dontavious Blair, among other crimes. Jarnigan and Davis appeal, both contending that the trial court improperly commented on the evidence in the presence of the jury. Davis alone also contends that the trial court erred when it admitted certain evidence at trial, when it restricted his cross-examination of a witness for the prosecution, and when it charged the jury. Upon our review of the record and briefs, we see no error, and we affirm.[1]

---

[1] The crimes were committed on April 28, 2010. Along with Sylvester Antoine Guice, Jarnigan and Davis were indicted on April 12, 2011, and each was charged with malice murder, three counts of felony murder, two counts of armed robbery, one count of burglary, and five counts of aggravated assault. In addition, Davis and Guice were charged with unlawful possession of a firearm during the commission of a felony. The trial of Jarnigan and Davis commenced on April 25, 2011, and the jury returned its verdict four days later, finding both guilty on all counts. Jarnigan and Davis each was sentenced to imprisonment for life for the malice murder of Blair, two consecutive terms of imprisonment for life for the armed

1. Viewed in the light most favorable to the verdict, the evidence shows that Brittnee Mahoney and Krystale Jennings hosted "stripper parties," and they invited Jarnigan to their home to discuss whether Jarnigan might wish to work at such parties. In anticipation of visiting their home, Jarnigan devised a plan to rob them, and Jarnigan enlisted the aid of Davis and Sylvester Antoine Guice. On April 28, 2010, Jarnigan went to the home, and as she visited with Mahoney and Jennings, Davis and Guice — both of whom were armed — hid nearby. After a few minutes, Jarnigan left to go to a store, but she shortly returned to the home.

---

robberies of Blair and Kyle Baber, a consecutive term of imprisonment for twenty years for burglary, and four consecutive terms of imprisonment for twenty years for the aggravated assaults upon Baber, Brittnee Mahoney, Darvi Stevenson, and Krystale Jennings. Davis was sentenced to an additional consecutive term of imprisonment for five years for unlawful possession of a firearm during the commission of a felony. The verdict as to felony murder was vacated by operation of law, Malcolm v. State, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993), and the remaining aggravated assault (upon Blair) merged with the malice murder (of Blair). Guice was not tried but instead pled guilty to voluntary manslaughter. Davis filed a motion for new trial on May 23, 2011, Jarnigan filed a motion for new trial two days later, and both motions were amended on August 15, 2012. On the motions for new trial, the trial court vacated the sentences for the aggravated assault upon Baber — Jarnigan and Davis both had complained in their motions that the aggravated assault upon Baber merged with the armed robbery of Baber — but the trial court otherwise denied the motions, all on June 26, 2013. Jarnigan and Davis timely filed notice of appeal on June 28, 2013, and the cases were docketed in this Court for the January 2014 term and submitted for decision on the briefs.

2

Jarnigan, however, did not come back inside the home. Jennings saw Jarnigan outside, she came out to speak with Jarnigan, and when she did, she was accosted by Davis and Guice, who pointed a gun at Jennings. Davis and Guice entered the home, where they confronted Kyle Baber and took his pants from him at gunpoint, evidently because he refused their demand that he empty his pockets. Davis and Guice then tried to enter a bedroom, but Mahoney and Blair held the door shut. A shot was fired through the door, and it fatally wounded Blair. At that point, Davis and Guice broke into the bedroom, put a gun to Mahoney's head, and took a wallet from Blair's body. As Davis and Guice left the home, they encountered Darvi Stevenson and put a gun in his face. Jarnigan then drove Davis and Guice away. Investigators later found Davis's fingerprints on the glass of the front door of the home.

Neither Jarnigan nor Davis disputes the legal sufficiency of the evidence. We nevertheless have independently reviewed the evidence to assess whether it is sufficient to sustain their convictions. Upon that review, we conclude that the evidence adduced at trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Jarnigan and Davis were guilty of the

3

crimes of which they were convicted. Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Jarnigan and Davis both contend that the trial court improperly commented on the evidence in the presence of the jury. During closing arguments, the lawyer for Jarnigan said:

> [T]he State wanted you to believe Krystale Jennings. The same young lady who sat on that stand and pretty much admitted to you that she runs stripper parties, and implied that she's kind of a pimp. She collects money; she benefits. She also sat there and told you that she cards people and looks at their IDs. I submit to you that's not true. She has not been honest with you at all. My client is eighteen years old.

At that point, the prosecuting attorney objected that "[t]hat didn't come into evidence," and the trial judge responded, "I'm going to sustain that objection." According to Jarnigan and Davis, the ruling of the trial court on the objection of the prosecuting attorney amounted to an improper comment upon the evidence. We disagree.

Pursuant to OCGA § 17-8-57, "[i]t is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." But in almost all cases, "sustaining or overruling an objection is not a violation

4

of OCGA § 17-8-57." Walker v. State, 308 Ga. App. 176, 182 (2) (b) (707 SE2d 122) (2011) (punctuation and citation omitted). See also Ellis v. State, 292 Ga. 276, 282 (3) (736 SE2d 412) (2013); Mathis v. State, 276 Ga. App. 205, 207 (622 SE2d 857) (2005); Lockaby v. State, 265 Ga. App. 527, 528-529 (1) (594 SE2d 729) (2004). In the circumstances presented here, the claim that a "simple statement sustaining an objection in any way implicates OCGA § 17-8-57" is "patently meritless." Leggon v. State, 249 Ga. App. 467, 473 (6) (549 SE2d 137) (2001). Moreover, the trial court in this case cautioned the jury that "[b]y no ruling or comment that the [c]ourt has made during the progress of the trial has the [c]ourt intended to express any opinion upon the facts of the case, upon the credibility of the witnesses, upon the evidence[,] or upon the guilt or innocence of the defendants." See Ellis, 292 Ga. at 282 (3). The trial court did not violate OCGA § 17-8-57.

3. Davis claims that the trial court improperly admitted hearsay testimony when it allowed Emily Taylor — an expert fingerprint examiner with the Georgia Bureau of Investigation who testified for the prosecution — to testify

5

that another fingerprint examiner had "verified" her work.[2] Before Taylor said that another examiner had "verified" her work, she explained that GBI fingerprint examiners use a methodology known as "ACE-V," a term that

---

[2] Davis objected on hearsay grounds when Taylor testified that the initials of Jessie Wargo appeared on a fingerprint card, when Taylor identified Wargo as another fingerprint examiner, and when Taylor testified that Wargo had "verified" the work that Taylor had done. But without more, the identification of a person who put initials upon a document is not hearsay. See People v. Mandez, 997 P2d 1254, 1264-1265 (V) (Colo. App. 1999). And Davis made no hearsay objection when Taylor explained that verification involves an independent analysis by another examiner who reaches her own conclusions based upon her own analysis and comparisons, and Davis likewise made no hearsay objection when Taylor testified that Wargo would have noted any disagreement with Taylor, implying that the absence of such a notation indicated that Wargo agreed with Taylor. Moreover, Davis made no objection at all on confrontation grounds. Accordingly, we have no occasion in this case to consider whether any testimony offered by Taylor was barred by the Confrontation Clause, see Moore v. State, 294 Ga. 682, 685 (2) (755 SE2d 703) (2014), and about hearsay, we decide only whether the testimony that Wargo "verified" the work of Taylor was inadmissible. See Andrews v. State, 293 Ga. 701, 704 (3) (749 SE2d 734) (2013). We express no opinion about whether confrontation objections or additional hearsay objections would have had merit, and we caution the reader to keep in mind the limited scope of our decision in this case. We also caution the reader that this case is governed by our former Evidence Code, and we offer no opinion about admissibility under the new Evidence Code.

We note as well that Davis argues in his briefs that, to the extent his lawyer failed to make objections on confrontation grounds or additional objections on hearsay grounds, his lawyer was ineffective. But in support of this argument, Davis relies on a transcript of a hearing on the motion for new trial that appears nowhere in the record transmitted to this Court. Although the Attorney General noted the absence of this transcript in his brief, Davis — who filed a brief in reply to the brief of the Attorney General — never has moved to supplement the record with this missing transcript or attempted to explain its absence. See Wilson v. State, 304 Ga. App. 623, 625-626, n.13 (2) (697 SE2d 275) (2010). Accordingly, we must presume that the trial court was authorized to find that Davis failed to carry his heavy burden to show ineffective assistance in this regard. See Wade v. State, 274 Ga. 791, 793 (6) (560 SE2d 14) (2002); Sorrells v. State, 267 Ga. 236, 241 (9) (476 SE2d 571) (1996).

derives from the four steps of the process, "analysis, comparison, evaluation, and verification." Viewed in this context, the testimony that another examiner had "verified" the work of Taylor tended to show that Taylor had followed a standard and accepted methodology in her field of expertise, and the verification to which Taylor testified, therefore, formed a basis for her own expert opinion.

When offered and admitted for such a purpose, testimony about the verification of a fingerprint comparison that is as limited as that to which Davis objected, see note 2 supra, is not inadmissible hearsay. An expert witness generally is permitted to explain the basis for her opinions, including the standard and accepted methodology that she used to form her opinions. See Miller v. Miller, 288 Ga. 274, 275 (1) (705 SE2d 839) (2010). As a prominent national treatise on evidence law has explained:

> In some fields[,] corroboration or verification is part of the standard procedure by which judgments are reached. Fingerprint examiners, for example, generally follow a procedure known as ACE-V, an acronym standing for analysis, comparison, evaluation, and verification. One of the necessary steps that a fingerprint examiner must follow to declare a match is verification – confirming that a second expert agrees with his conclusion. When courts permit a fingerprint expert to testify about ACE-V, they are allowing testimony that an out-of-court expert has corroborated the opinion of the witness.. . . If the bolstering process is built into the methods of the field, courts may be less likely to exclude corroboration as

7

> bolstering, for in any given instance, the verification by another qualified expert shows that the expert is following an established protocol in the discipline.

David H. Kaye et al., The New Wigmore: Expert Evidence § 4.7.1 (b) (1). The North Carolina Supreme Court has agreed that testimony about the verification of a fingerprint comparison is not inadmissible hearsay to the extent that the verification is part of a standard and accepted methodology and thereby forms a basis for the opinion of the testifying fingerprint examiner. State v. Jones, 368 SE2d 844, 848 (N.C. 1988). We do not have to decide in this case, however, the full extent to which testimony about the verification process is permissible. Here, Davis objected when Taylor said that another examiner "verified" her work, but he made no hearsay objection when Taylor later explained that the other examiner had employed the same examination process, and he made no hearsay objection when she implied that the other examiner had reached the same conclusions. Compare State v. Connor, 937 A2d 928, 930 (N.H. 2007). We are satisfied that the testimony to which Davis objected — testimony merely about the fact of "verification," not about the details of the verification process or the independent conclusions of the verifying examiner — was properly admissible to explain the basis for the opinion of the testifying examiner, which

8

is not hearsay. See Roebuck v. State, 277 Ga. 200, 202 (1) (586 SE2d 651) (2003); State v. Quick, 405 SE2d 179, 196 (N.C. 1991). Accordingly, the trial court did not err in admitting this testimony over objection.

4. Davis also claims that the trial court improperly restricted his cross-examination of Taylor. Although the accused is generally entitled to a thorough and sifting cross-examination of the witnesses for the prosecution, the scope of cross-examination is not unlimited, and trial courts "retain wide latitude to impose reasonable limits on cross-examination based on concerns about, among other things[,] interrogation that is only marginally relevant." Nicely v. State, 291 Ga. 788, 796 (4) (733 SE2d 715) (2012) (citations and punctuation omitted). Here, Davis complains that, when he asked Taylor about the precise standards applied by fingerprint examiners in certain other countries, the trial court sustained an objection to the relevance of the question. But the trial court permitted Davis to elicit testimony that there is no national standard in the United States that identifies how similar two prints must be to amount to a match. Moreover, the trial court allowed Davis to elicit testimony that the degree of similarity is determined by each examiner, based on her own training and experience. Davis also complains that, when he tried to ask Taylor about a

particular case in which the Federal Bureau of Investigation mistakenly identified an Oregon lawyer as a terrorist based on a fingerprint match,[3] the trial court sustained an objection. But as to misidentifications in fingerprint comparison, Davis never attempted to cross-examine Taylor about her general awareness of other cases in which faulty fingerprint analysis led to a misidentification. Moreover, Davis was permitted to cross-examine Taylor about the possibility of mistakes in fingerprint comparison. See In re H.A., 311 Ga. App. 660, 660, n.1 (716 SE2d 768) (2011). We see no abuse of discretion in the limitation of the cross-examination of Taylor in this case.

5. Last, Davis argues that the jury charge on unlawful possession of a firearm during the commission of a felony worked a constructive amendment of the indictment, so as to permit his conviction in a manner that was not charged in the indictment. Davis complains that the indictment charged only that he unlawfully had a rifle "on his person" during the commission of the predicate felonies, but the trial court charged the jury that a person has a firearm during the commission of a felony when he has a firearm on his person *or* "within

_____

[3] See generally Mayfield v. United States, 599 F3d 964 (9th Cir. 2010).

10

arm's reach of" his person. Davis did not object to this instruction, however, and for that reason, we review it only for plain error. See OCGA § 17-8-58 (b). See also State v. Kelly, 290 Ga. 29, 31-32 (1) (718 SE2d 232) (2011).

Where the indictment charges that a defendant committed an offense in one specific way, it generally is error for a trial court to instruct the jury that the offense could be committed in another way. Williams v. Kelley, 291 Ga. 285, 286 (728 SE2d 666) (2012). But as this Court has made clear repeatedly, the potential harm of such an error is cured "where the court provides the jury with the indictment and instructs jurors that the burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt." Id. at 286-287 (citation and punctuation omitted). The record in this case shows quite clearly that the trial court so instructed the jury, and it also read and specifically provided the indictment to the jury. Id. at 287. Accordingly, the jury charge does not amount to plain error. See Kelly, 290 Ga. at 33 (2) (a).

Judgments affirmed. All the Justices concur.