In the Supreme Court of Georgia

Decided: November 17, 2014

S14A1165.  ROUSE v. THE STATE.

THOMPSON, Chief Justice.

Appellant Steven Rouse was found guilty of felony murder and robbery in connection with the beating death and robbery of Scott Gillens.  His motion for new trial, in which he asserted the general grounds, was denied, and he appeals, arguing that the trial court erred by commenting on the evidence in violation of OCGA § 17-8-57.  After reviewing the record and relevant case law, we agree that the trial court's statement to the venire that the murder "happened in Muscogee County" violated OCGA § 17-8-57 and reverse the judgment of the trial court.[1]

---

[1] The crimes occurred on September 3, 2006. Appellant was indicted by a Muscogee County grand jury on February 13, 2007, on charges of malice murder, felony murder, and robbery. Following a jury trial from August 28-31, 2007, appellant was found guilty on August 31, 2007, of felony murder based on the underlying felony of robbery. On September 10, 2007, he was sentenced to life in prison for the felony murder conviction.  Appellant filed a motion for new trial on September 11, 2007, which was denied on March 17, 2014.  Appellant's notice of appeal was filed on March 24, 2014.  The appeal was docketed in this Court for the April 2014 term and orally argued on July 7, 2014.

1. Viewing the evidence in the light most favorable to the jury's verdict, the evidence presented at trial revealed that Melissa and Missy Conaway showed their boyfriends, Charles Mellinger and Brian Dewberry, sexual text messages sent to them by the victim. While Mellinger and Dewberry stated an initial desire to "jump" the victim, all four individuals eventually formulated a plan to lure the victim to their house so that Mellinger and Dewberry could rob him. Dewberry, who is appellant's brother, asked appellant to help with the robbery and appellant agreed.

On the day of the crimes, Melissa invited the victim to an apartment complex near her house in Muscogee County and agreed to have sex with him in exchange for cigarettes. Melissa and the victim later went to the store to get the cigarettes while Missy called appellant. Appellant told Missy to have Melissa take the victim to a nearby parking area next to some woods. After the victim parked near the woods, Melissa walked away from the victim's truck. Appellant, Dewberry and Mellinger, who had been waiting in the woods, then approached the victim. Appellant punched the victim, placed him in a choke hold, and kicked him in the head and throat several times while he lay on the ground. Mellinger took the victim's wallet but threw it in the bushes after

2

discovering it contained no money. The victim died as a result of injuries to his head and neck resulting in asphyxiation. Appellant, who was arrested later that day, admitted to police that he hit and kicked the victim in the head and throat but he claimed he did so in self-defense.

We find the evidence was sufficient to enable a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crime for which he was convicted. Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant contends the trial court violated OCGA § 17-8-57 by improperly expressing to the venire during jury selection its opinion that venue was proper in Muscogee County. OCGA § 17-8-57 provides:

> [i]t is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused. Should any judge violate this Code section, the violation shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below with such directions as the Supreme Court or Court of Appeals may lawfully give.

The language of this statute is mandatory, thus any violation of OCGA § 17-8-57 requires a new trial regardless of whether there has been any showing of

3

actual prejudice to the defendant.  See Patel v. State, 282 Ga. 412, 415 (651 SE2d 55) (2007).  See also Collier v. State, 288 Ga. 756, 763 (707 SE2d 102) (2011) (Nahmias, J., specially concurring) (if violation of OCGA § 17-8-57 is found, "conviction will be reversed without further consideration of the effect of the error on the defendant's substantial rights or the fairness and integrity of the proceeding"); State v. Gardner, 286 Ga. 633, 634 (690 SE2d164) (2010) (because violation of OCGA § 17-8-57 will always constitute plain error, failure to object does not waive issue on appeal).

The record in this case reflects that during its preliminary instructions to the venire, the trial court commented as follows:

> This process this morning is what[] we call voir dire.  Voir dire just simply means to speak the truth.  This means that you will be hearing about a case, which is a murder case, that happened in Muscogee County, and you'll be asked questions about this case.

The court's statement that jurors would be hearing a case that happened in Muscogee County clearly and unambiguously suggested that venue in Muscogee County had been established or was not in dispute in this case.  Venue is a jurisdictional element that must be proved by the State beyond a reasonable doubt in every criminal case, and the determination of whether venue has been

established is an issue soundly within the province of the jury. See Patel, supra, 282 Ga. at 414. We find that when, as in this case, a trial judge makes a statement to jurors, however inadvert or unintentional, informing them that a crime occurred in a particular county, i.e., a particular venue, the making of the statement violates § 17-8-57 because it could be construed as a comment regarding a required element of the State's case. Id. See Jones v. State, 189 Ga. App. 232 (1) (375 SE2d 648) (1988) (fact that court did not intend to express opinion about issue within province of jury did not excuse violation of OCGA § 17-8-57). That the critical element about which the comment is made is a jurisdictional element of the State's case makes no difference for purposes of §17-8-57; a comment made by a trial court affirmatively establishing a disputed element the State has the burden of proving at trial is error, and this Court cannot surmise whether it may have caused actual prejudice to the defendant. See Murphy v. State, 290 Ga. 459 (2) (722 SE2d 51) (2012) (trial court's favorable comments about witness violated OCGA § 17-8-57 because it is impossible to determine that jurors were not influenced).

This conclusion is supported by and entirely consistent with our recent decision in Patel v. State, supra, where we held violative of § 17-8-57 a trial

court's statement before jurors that "[v]enue is proper in Fayette County." Although the trial court in the instant case did not specifically reference "venue" in its statement, we find no substantive difference between a court's statement that "[v]enue is proper in Fayette County" and a statement that the crime "happened in Muscogee County." Both statements inform or intimate to the jury the trial court's opinion as to a critical element of the State's case, thereby potentially influencing jurors in their evaluation of whether the State has met its burden of proof at trial. See also State v. Anderson, 287 Ga. 159, 161 (695 SE2d 26) (2010) (holding that trial court's question whether venue had been established and questioning of a witness as to the location of the crime followed by the comment "I just wanted to make sure" constituted an improper expression of opinion that venue had in fact been proven).

The State asserts that reversal is not required because the court's comment was a "slip of the tongue" or was needed "to orient the venire to the time and place the crime was alleged to have occurred." None of the cases cited by the State in support of these propositions, however, involved an explicit comment by a trial judge indicating the court's opinion that a critical element that must be

proved by the State was not in dispute.[2]  See <u>Linson v. State</u>, 287 Ga. 881, 883-884 (700 SE2d 394) (2010) (statement during preliminary instructions that State may not use all of its witnesses and "may think they don't need them all" provided no basis for reversal under OCGA § 17-8-57 because it did not address credibility of the witnesses or any fact at issue in trial); <u>Sutton v. State</u>, 263 Ga. App. 188, 191 (587 SE2d 379) (2003) (no reversible error when trial court explained to jurors how to use verdict form, but instructed them "to remember to consider each defendant guilty"); <u>Atkins v. State</u>, 253 Ga. App. 169, 170-171

---

[2]  Although the dissent argues that venue was not in dispute in this case, the authority it offers for this proposition are inapposite because those cases either did not involve a trial court's comment on a required element of the State's case or the defendant affirmatively conceded the fact issue about which the trial court commented.  See <u>McCloud v. State</u>, 166 Ga. 436 (143 SE 558) (1908) (defendant admitted he was in police custody when he shot the victim); <u>Taylor v. State</u>, 135 Ga. 622 (70 SE 237) (1911) (trial court's comment that the victim was "killed" did not violate rule prohibiting court from commenting that a particular fact had been proved because defendant, whose only defense was alibi, in his own statements referred to the "killing" of the victim); <u>Johnson v. State</u>, 30 Ga. 426, 431 (1860) (it was not error for trial court to state in presence of jurors that the shooting was not in dispute where defendant admitted shooting the victim but claimed justification for doing so); <u>Thomas v. State</u>, 27 Ga. App. 38 (107 SE 418) (1921).  Similarly, in <u>Sauerwein v. State</u>, 280 Ga. 438, 439 (629 SE2d 235) (2006), the uncontested fact about which the trial court commented was whether the child victim was teething at the time the crime occurred, clearly not a fact the State was required to prove in order to convict Sauerwein of the child's murder.  Here, appellant pled not guilty to the crimes charged, thereby placing venue in dispute, and he made no concessions or affirmative statements at trial to the affect that he was not holding the State to its burden of proving venue.  The dissent's suggestion that appellant's failure to present venue evidence at trial authorized the trial court to express its opinion about whether the State had met its burden of proving venue runs afoul of our § 17-8-57 precedent and would unconstitutionally shift the burden of proof in a criminal proceeding.

(2) (558 SE2d 755) (2002) (court's reference to "facts" in the indictment was not a comment on evidence or opinion of guilt).

Nor can we agree with the State's suggestion that an improper comment made during preliminary instructions to the venire does not constitute a violation of OCGA § 17-8-57. OCGA § 17-8-57 prohibits a judge in a criminal case "during its progress or in his charge to the jury" from expressing or intimating an opinion on the evidence or the accused's guilt or innocence. It is beyond dispute that voir dire is part of the "progress" of a case, and the State concedes that the jurors ultimately charged with determining whether the State had proved the essential elements of its case against appellant, including the venue element, were members of the venire to which the trial court's comment was directed. See Ellington v. State, 292 Ga. 109, 124 (7) (b) (735 SE2d 736) (2012) ("[m]uch like cross-examination is the engine of truth in our justice system, voir dire is the engine of selecting a jury that will be fair and impartial); Zamora v. State, 291 Ga. 512, 518 (7) (b) (731 SE2d 658) (2012) (proceedings during which jury is selected is critical stage).

Contrary to the State's argument and the position taken by the dissent, even considering the trial court's statement in context, it cannot be construed as

a mere comment on the evidence jurors could expect to hear. The challenged statement was made during the trial court's description of voir dire, explaining that venire members would "be hearing about a case . . . that happened in Muscogee County." It was not made in the context of the court's explanation of the allegations of the indictment or the State's burden of proof and cannot, therefore, reasonably be construed as a comment on what the State was expected to prove at trial. While this Court on several occasions has found no violation of § 17-8-57 on the basis that a trial court's comments referenced only the State's *allegations*, in each of these cases the context of the subject being discussed or the trial court's contiguous comments clearly demonstrated that the trial court was referring to the State's allegations or evidence that would be offered by the State during its presentation of evidence. See Foster v. State, 290 Ga. 599, 600-601 (2) (723 SE2d 663) (2012) (finding no violation of OCGA § 17-8-57 in court's pre-evidentiary charge that "State will introduce evidence in support of the charges contained in the indictment"); Cammon v. State, 269 Ga. 470, 475 (8) (500 SE2d 329) (1998) (trial court's reference during preliminary instructions to evidence that "will be developed" regarding the manner in which crime was committed was reference to evidence jurors could expect to hear, not

9

unauthorized expression of opinion as to what had been proven).

Arguing that additional instructions given by the trial court can be considered when determining the "context" of a trial court's statement, the dissent would find no violation of § 17-8-57 because, it argues, jurors here likely would not have interpreted the court's statement that the murder happened in Muscogee County as an expression of its opinion on proof of venue because the trial court subsequently instructed jurors that what the court said is not evidence and reminded them it was their responsibility to decide the case based on the evidence presented. In support of its argument, the dissent cites Jarnigan v. State, ___ Ga. ___ (761 SE2d 256) (2014), Ellis v. State, 292 Ga. 276 (736 SE2d 412) (2013), and Linson v. State, 287 Ga. 881 (700 SE2d 394) (2010). A careful review of these cases reveals, however, that they do not stand for this proposition. In each of the cited cases, this Court held the challenged statements, standing alone, did not violate § 17-8-57. The Court went on to acknowledge *in dicta* that the court had given additional instructions, but the giving of such instructions was not the basis of this Court's decisions. The rule in Georgia remains that any violation of § 17-8-57 is subject to the super-plain-error standard of review, and no amount of additional instruction can cure the

10

presumed, inherent prejudice caused by a violation of this statute. See Patel, supra, 282 Ga. 412; Gardner, supra, 286 Ga. at 634. While a court's other statements or instructions can affect the context and, therefore, the meaning of a court's statement, when a trial court makes a clear statement regarding whether a critical element of the State's case has been or needs to be established, a later instruction reminding jurors that they are the ones who ultimately decide whether the State has met its burden of proof cannot cure the presumed prejudice caused by the court's expression of its opinion of the evidence.

We conclude that under the circumstances of this case the trial court's statement to the venire that the crime took place in Muscogee County expressed or intimated the court's opinion as to a disputed issue of fact at trial in violation of OCGA § 17-8-57. In light of the mandatory nature of the statute, the judgment of the trial court must be reversed and appellant must be granted a new trial. See Patel, supra, 282 Ga. at 414 (2).

Judgment reversed. All the Justices concur, except Hines, P.J., Nahmias, and Blackwell, JJ., who dissent.

11

S14A1165.  ROUSE v. THE STATE.

NAHMIAS, Justice, dissenting.

Reading the majority opinion, one might think that in reversing Rouse's murder and robbery convictions, the Court today is simply applying our precedents under OCGA § 17-8-57, and in particular the two recent cases where the Court reversed convictions based on the trial court's improper comment on proof of venue, Patel v. State, 282 Ga. 412, 413 (651 SE2d 55) (2007), and State v. Anderson, 287 Ga. 159, 160 (695 SE2d 26) (2010).  This is not so.  In fact, the majority's decision extends well beyond Patel, Anderson, and 150 years of other cases interpreting § 17-8-57 and its predecessor statutes.  Never before has this Court reversed a conviction based on a trial judge's comment of this sort – an isolated remark made while outlining for prospective jurors what sort of "case" they would be "hearing about"; said during the most preliminary of instructions to the prospective jurors, before voir dire questioning had even begun; accompanied shortly thereafter and followed repeatedly by explicit instructions to the jurors to decide the case based only on the evidence presented during trial and not to treat anything the court says as such evidence; never

objected to by defense counsel during trial or by Rouse's new appellate counsel on motion for new trial; and concerning an issue – venue – that the State proved without any dispute at trial and that remains entirely uncontested on appeal.

The first sentence of OCGA § 17-8-57 says, "It is error for any judge in criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." The question, however, is not whether a judge's remark, plucked from the transcript, might be read as a comment on the proof. Instead, the question is whether, when the challenged remark is considered *in its full context*, a "reasonable juror would have interpreted the trial court's remark as the expression of an opinion on any issue to be decided in the case." Hufstetler v. State, 274 Ga. 343, 345 (553 SE2d 801) (2001). See also Dubose v. State, 294 Ga. 579, 586 (755 SE2d 174) (2014) ("Viewed in context, no reasonable juror would construe the court's instruction on identification to be a comment upon the evidence."). As demonstrated in Division 1 below, when the single phrase challenged in this appeal is viewed not in isolation, but rather in the full context of Rouse's trial, it becomes clear that reasonable jurors would not have understood the trial court to be expressing its opinion on whether venue was or

2

was not proved in this case. The majority's decision to the contrary represents a novel and unwarranted expansion of § 17-8-57.

There is another important point to make. As discussed further in Division 2 below, if judicial comments like the one at issue in this case are to be deemed error under OCGA § 17-8-57, then the time has come for the General Assembly to seriously consider amending the remedial section of this statute.

The second sentence of § 17-8-57 says:

> Should any judge violate this Code section, the violation shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below with such directions as the Supreme Court or Court of Appeals may lawfully give.

This Court has held that an error under § 17-8-57 mandates reversal of a conviction and a new trial even if the defendant did not object to the error at trial and even if there is no showing that the error caused the defendant any actual prejudice. See Wells v. State, 295 Ga. 161, 167 (758 SE2d 598) (2014). This "super-plain-error" standard of appellate review, see id., is extremely unusual in Georgia law (and in American law), and it can lead to unjust results. That is the situation in this case, where it is highly probable that the trial court's remark, even if deemed improper, did not contribute to the jury's guilty verdicts, since

the State readily proved that venue was proper in Muscogee County, the defense never disputed that proof, and Rouse otherwise received a full and fair trial.

Although it is not constitutionally required and departs from the common-law tradition and the policy of some states and the federal courts, the first sentence of § 17-8-57 reflects Georgia's longstanding policy of prohibiting trial judges from expressing their opinions on the guilt of the defendant and the evidence presented at trial. There are good arguments for continuing that policy, and there are good arguments for reversing convictions and requiring new trials when judges have made comments that caused the defendant actual prejudice and thus made the outcome of the trial unreliable and unfair. But other than "this is how we have always done it" – and actually we have *not* always done it this way – I see no good arguments for reversing convictions *in every single case* where a judge violated § 17-8-57, even where – as in this case – the violation undoubtedly caused no harm to the defendant. After all, we do not *automatically* reverse convictions when a trial court violates innumerable other important statutory policies, such as the rules of evidence, or even when a trial court violates constitutional requirements; such errors are almost always subject to harmless-error review. Particularly if this Court – and because of the binding

4

effect of our precedents, every court in Georgia – applies the first sentence of § 17-8-57 as expansively as the majority has done in this case, it seems appropriate for the General Assembly to repeal the second sentence of § 17-8-57 and allow violations of this statute to be treated like violations of other statutes.

1. ***Viewing the Challenged Remark in Its Full Context, the Trial Court Did Not Violate OCGA § 17-8-57.***

Rouse challenges one portion of one sentence said by the trial court during its preliminary instructions to the full venire, before the voir dire questioning began at the start of what turned out to be a three-day trial. The challenged phrase is pulled from the following passage found on page 17 of the 519-page trial transcript – the second page after the prospective jurors were brought into the courtroom:

> This process this morning is what[] we call voir dire. Voir dire just simply means to speak the truth. This means that you will be hearing about a case, which is a murder case, that happened in Muscogee County, and you'll be asked questions about this case.

Rouse did not object under OCGA § 17-8-57 to this or any other statement made by the court during the trial, nor did he raise any § 17-8-57 issue in his motion for new trial, and even now he does not contend that the trial court ever expressed an opinion "as to the guilt of the accused." But on appeal Rouse

5

argues that the phrase "a case . . . that happened in Muscogee County" expressed the court's "opinion" that venue was proved to be proper in Muscogee County. When that phrase is considered in the full context of this trial, it becomes apparent that reasonable jurors would not have understood the trial court to be expressing its opinion on whether venue was or was not proved in this case – in distinct contrast to the judicial comments on venue that this Court held to be improper in <u>Patel</u> and <u>Anderson</u>.

### *(a)    The Challenged Remark Considered in Its Immediate Context.*

We normally look first to the immediate context of the challenged remark. In <u>Patel</u>, the trial court unequivocally expressed its opinion that venue was established and indeed told the jury that the defendant would not be entitled to dispute venue: "the trial court, in response to opening statement by defense counsel, interrupted counsel and stated, 'That's incorrect. That is not a defense to this case. Venue is proper in Fayette County or we wouldn't be here right now.'" <u>Patel</u>, 282 Ga. at 413. Likewise, in <u>Anderson</u>, the judicial comments found to violate § 17-8-57 expressly and unequivocally referred to the proof of venue – the trial court interrupted the prosecutor's examination of a witness to

6

ask several questions about venue; then asked the prosecutor, "Did we establish venue on this one?"; and concluded, "All right. I know we had some confusion because she had worked at one store and she's now working in another one. I just wanted to make sure." Anderson, 287 Ga. at 160.

In this case, by contrast, the trial court's challenged remark did not mention "venue" and was made in the context of the "case" that the prospective jurors would later be "hearing about." The court told the potential jurors that they would be hearing about (1) "a case . . . that happened in Muscogee County" and (2) "a murder case" – or, to put the modifiers in the opposite order, a "Muscogee County case" and "a case of murder." In this context, "case" connotes the lawsuit at hand – the *claims* that the State has made against the defendant, the *truth* of which the jury will have to decide; and the adjectives used to describe the "case" are not most naturally understood to represent established *facts*, but rather *contentions* presented by the suit for the jury's determination. See Black's Law Dictionary (9th ed. 2009) (defining "case" as "[a] civil or criminal proceeding, action, suit, or controversy at law or in equity."). One might call this "a case . . . that *allegedly* happened in Muscogee County" and "an *alleged* murder case," but that is unnecessary and even

7

awkward, because "case" in this context implies "alleged."  Notably, the trial court did *not* tell the jury that "the *murder* 'happened in Muscogee County'" or that the "*crime* 'happened in Muscogee County,'" as the majority opinion repeatedly mischaracterizes the court's statement.  Maj. Op. at 1, 6, 10, 11.

This connotation of the word "case" is supported by the trial court's other use of the word in the same sentence – in the phrase "a *murder* case," which came smack in the middle of the phrase "a case . . . that happened in Muscogee County."  Rouse argues (now) that by referring to "a case that happened in Muscogee County," the court was clearly expressing its opinion that the events in question *in fact* happened in Muscogee County.  If that is so, then by telling the jury that this was "a murder case," the court was also clearly expressing its opinion that the events in question *in fact* involved a murder.  Yet Rouse has never contended (even on appeal) that the court expressed an improper opinion on the issue of murder – even though whether the killing in this case was a murder was *the* disputed issue for the jury to determine.  Rouse never disputed the State's evidence that the victim was robbed and killed in Muscogee County, and he admitted killing the victim; the focus of his defense was that the killing was not "murder" but rather "voluntary manslaughter."  Thus, while the court's

8

opinion that venue was proper would have been meaningless to the outcome of the trial, the court's opinion that what happened was a murder would have directly undermined his defense theory.

In sum, considered in a context where "hearing about a case" signals what sort of dispute the prospective jurors have been summoned to decide, the trial court's statement that the jurors would be "hearing about a case . . . that happened in Muscogee County" was by no means "clearly and unambiguously" an expression of the court's opinion "that venue in Muscogee County had been established or was not in dispute in this case." Maj. Op. at 4-5. This is demonstrated by the fact that Rouse apparently sees no problem with the trial court's statement that the jurors would be "hearing about . . . a murder case." Indeed, if our rule is to be that a trial court has expressed an opinion to the jury about what has been proved any time the court uses the word "case" along with a modifier describing an element of the dispute without adding the explicit qualifier "alleged," then close review of the transcript of many criminal trials may reveal violations of OCGA § 17-8-57, mandating automatic reversal. In this respect, I note that the trial court here also told the venire – on the transcript page before the challenged remark – that all "*felony* cases must be tried in [a]

9

Superior Court" like the one they were in, and that "[t]his week we are trying *criminal* cases." Does this mean that the trial court expressed its opinion that Rouse had committed a "felony" and was a "criminal"?

### (b) The Challenged Remark Considered in the Context of Preliminary Jury Instructions.

The context also includes the fact that the trial court's challenged remark came during its most preliminary instructions to the venire, before the voir dire questioning had even started. I agree with the majority opinion that OCGA § 17-8-57 applies by its terms to the entire trial, including the jury selection process, and thus potentially to any statement that the court makes to those who ultimately serve on the trial jury. See Maj. Op. at 8. However, the preliminary-instruction context is highly relevant to how reasonable jurors would understand what the court here said – whether the court was expressing its "opinion" about the proof of a material fact, even though no proof had yet been offered or even discussed, or whether the court's statement was merely an introductory description of what type of controversy the jurors would be deciding if selected to serve.

The prefatory comment challenged here is in distinct contrast to <u>Patel</u>,

10

where the trial court stated its definitive opinion that "[v]enue is proper in Fayette County" during the defense opening statement, precluding defense counsel's efforts to tell the jury what to expect as evidence on that issue, see 282 Ga. at 413, and Anderson, where the trial court's statements about proof of venue were interjected into a witness's testimony about where the crimes occurred, see 287 Ga. at 159-160. It should be noted that, in the 150-year history of OCGA § 17-8-57 and its predecessors, there appears to be *not a single case* where the reviewing court has actually found a violation with regard to preliminary jury instructions. See, e.g., Linson v. State, 287 Ga. 881, 884 (700 SE2d 394) (2010), and the cases cited on pages 8-10 of the majority opinion. See also Atkins v. State, 253 Ga. App. 169, 170-171 (558 SE2d 755) (2002) (finding several statements made to the jury by the court before the evidence was presented did not amount to improper opinions).

### (c) The Challenged Remark Considered in the Context of the Jury Instructions as a Whole.

The context also importantly includes what the trial court told the jurors throughout the trial about how they should decide the case. See Simmons v. State, 291 Ga. 705, 708 (733 SE2d 280) (2012) (explaining that OCGA § 17-8-

11

57 "'is violated only when the trial court's instruction, considered as a whole, assumes certain things as facts and intimates to the jury what the judge believes the evidence to be'" (citation omitted)); Mullinax v. State, 255 Ga. 442, 445 (339 SE2d 704) (1986) ("In order to determine whether a trial court has improperly expressed an opinion in its charge as to what has or has not been proved, the whole charge may be considered."). See generally Franklin v. State, 295 Ga. 204, 208 (758 SE2d 813) (2014) ("On appeal, we read the jury charges as a whole to determine the presence of any error."). To be sure, this does not mean that a trial court can cure a *clear* violation of OCGA § 17-8-57 – the sort of plainly improper expression of opinion made in Patel or Anderson – with additional jury instructions. See Patel, 282 Ga. at 415. Indeed, the trial court's recognition that it has improperly expressed an opinion, and its subsequent efforts to specifically instruct to the jury to disregard what was said, as occurred in Patel, see id. at 413 & n.3, constitute strong evidence that there *was* a violation of § 17-8-57.

But where, as here, it is *not clear* that what the trial court said could only be construed as an improper expression of opinion, then how reasonable jurors would have understood what the court said may be informed by the other

12

instructions the court gave them. Thus, in concluding that comments by trial courts did not violate § 17-8-57, Georgia's appellate courts have routinely taken note of instructions that the jury should not infer from the court's statements that it was expressing an opinion on guilt or evidence. See, e.g., Jarnigan v. State, 295 Ga. 603, 605 (761 SE2d 256) (2014) ("Moreover, the trial court in this case cautioned the jury that '[b]y no ruling or comment that the [c]ourt has made during the progress of the trial has the [c]ourt intended to express any opinion upon the facts of the case, upon the credibility of the witnesses, upon the evidence[,] or upon the guilt or innocence of the defendants.'" (citation omitted)); Ellis v. State, 292 Ga. 276, 282 (736 SE2d 412) (2013) (same, citing additional cases); Linson, 287 Ga. at 884 (citing additional cases). The discussion of such instructions in these cases – and there are many more – was an additional reason given for the holding that § 17-8-57 was not violated, not mere dicta as the majority suggests. See Maj. Op. at 10. Indeed, as the majority goes on to acknowledge, "a court's other statements or instructions can affect the context and, therefore, the meaning of a court's statement," where the statement in question is not an unequivocal violation of § 17-8-57. Maj. Op. at 11.

Accordingly, what the trial court here told the jurors, almost immediately after making the challenged statement and then repeatedly throughout the trial, provides valuable insight into whether, when it came time for those jurors to decide the case, they reasonably would have understood the court's remark, made about two minutes after they first entered the courtroom as prospective jurors two days before, that they "will be hearing about a case, which is a murder case, that happened in Muscogee County," to be an expression of the court's "opinion" that venue in Muscogee County had been proved. Unlike in Patel, there is no indication that the court (or anyone else in the courtroom) thought that the court had expressed an opinion on the proof and then tried to cure it.

Instead, what the record here shows (with emphasis added) is that, in the very same transcript paragraph as the challenged remark, the court instructed the venire:

> The bottom line [of the voir dire process] is if any one of you are on trial, you would want twelve individuals to be totally impartial and *listen to the facts and then make a determination based on the evidence* and not on any preconceived feelings about the case.

Two pages later in the transcript, before the voir dire questioning began, the

14

court instructed the prospective jurors that Rouse has

> been indicted by the Grand Jury of Muscogee County for two counts of murder, one felony murder and one malice murder, and also a charge of robbery. He comes into court with our presumption of innocence, and that presumption stays with him throughout the trial. And *the District Attorney's office, by and through evidence, witnesses, has to prove each and every element of the indictment.* If they do not, then of course the case will be thrown out or dismissed or found not guilty. And that burden rests on the State and never shifts to the defendant. . . . *The burden is on [the prosecutor] to prove this case and prove the . . . three charges.*[1]

The prospective jurors were then asked the statutory qualification questions. Despite having recently heard what Rouse and the majority opinion assert was the court's "opinion" on a "critical element" of the crimes, none of the jurors indicated that their mind was not "perfectly impartial between the State and the accused in this case."

After the trial jury had been selected and sworn, the court reiterated that

---

[1] The majority opinion asserts that the trial court's challenged remark "was not made in the context of the court's explanation of the allegations of the indictment or the State's burden of proof." Maj. Op. at 9. In reviewing jury charges "as a whole," however, this Court commonly considers instructions separated by many more than two pages in the trial transcript. See, e.g., Murray v. State, 295 Ga. 289, 292-293 (759 SE2d 525) (2014) (when deciding whether one of the trial court's jury instructions violated § 17-8-57, considering all instructions given by the court in the jury charge, including all instructions given before and after the challenged one); Dukes v. State, 290 Ga. 486, 486 (722 SE2d 701) (2012) (when deciding whether the trial court's answer to a question asked by the jury after deliberation began was proper, considering the re-charge along with the instructions given in the court's original charge).

15

the indictment was not evidence,

> because both sides of the case hasn't [sic] been heard yet. Just part of the D.A.'s case has been heard, and none of the defense case has been heard in the Grand Jury room. So that's why you're here and *that's why you'll make that determination, after you hear all the facts*. . . . [O]pening statements is [sic] not evidence. *Whatever I say up here is not evidence. The only evidence you will base your decision on in this case is what is heard from the witness stand from witnesses and any exhibits or any . . . other evidence that's put in.*

Just before opening statements, the court instructed the jury *again* on the presumption of innocence, the State's burden to prove each element and material allegation of the indictment, and the jury's role in determining the facts based on the evidence presented in the form of witness testimony and exhibits. The court concluded: "I instruct you . . . you must decide the case for yourself, solely on the testimony you hear from the witness stand and the exhibits admitted into evidence."

Finally, during its instructions to the jury after the State and the defense had presented their evidence and arguments – their respective "cases" – the court reiterated the defendant's presumption of innocence, the State's burden of proof based upon evidence, and what evidence includes and does not include, saying specifically, "It does not include . . . any comment I've made during the

16

trial." The court repeated that admonition later: "By no ruling or comment during this trial that the Court has made has the Court intended to express any opinion upon the facts of the case, upon the credibility of the witnesses, upon the evidence or upon the guilt o[f] the Accused – innocence of the Accused."

In sum, the jurors were unequivocally and repeatedly instructed that they were to decide this case (i.e., this controversy) based solely on the evidence presented, and that anything the court said was not evidence or an opinion about the evidence. "Qualified jurors under oath are presumed to follow the instructions of the trial court," Davis v. State, 294 Ga. 486, 488 (754 SE2d 67) (2014) (citations and quotation marks omitted), and jurors following the court's detailed instructions in this case would be quite unlikely to have interpreted the trial court's challenged remark as an expression of its opinion on proof of venue.

### (d) The Challenged Remark Considered in the Context of the Lack of Objection at Trial and on Motion for New Trial.

The context also includes the fact that Rouse's trial counsel did not object to the trial court's remark when it was made or at any point thereafter during the trial, and Rouse's appellate counsel did not raise an OCGA § 17-8-57 claim in the motion for new trial. There also is no claim that trial counsel provided

ineffective assistance in any respect or that the trial court committed any other trial error; indeed, the record indicates that this case was cleanly tried, and the motion for new trial raised only the general grounds.

Under this Court's more recent decisions, see Division 2 (a) below, Rouse's failure to raise a § 17-8-57 claim in the trial court does not *preclude* him from raising the claim on appeal. See Wells, 295 Ga. at 167. But where the trial transcript does not reveal an unequivocal expression of judicial opinion on proof or guilt, like the improper opinions on venue blatantly expressed in Patel and Anderson, we must look for other clues as to how the jurors in the courtroom interpreted what the trial court said. And when we do so, it is *relevant* that the person in the courtroom most focused on identifying trial court errors that could harm the defendant – Rouse's trial lawyer – appears to have heard nothing worthy of objection, and that the person most focused on identifying trial court errors after trial – Rouse's appellate lawyer – apparently noticed no obviously improper comment in reviewing the transcript for purposes of filing the motion for new trial. This case is different from Patel in this respect too, as defense counsel there objected to the trial court's unquestionably improper comment as soon as his opening statement was completed and the jury

18

was removed.  See 282 Ga. at 413.

### (e)  The Challenged Remark Considered in the Context of an Undisputed Fact.

Finally, the context of the challenged remark includes that the issue on which the trial court allegedly expressed its opinion – venue – was proved by the State and never disputed by the defense at trial (nor is it disputed on appeal). The only time the parties addressed venue was when the prosecutor asked the State's first witness, a Columbus Police Officer:  "I hate to ask the obvious, but for legal reasons I have to.  That area where the [victim's] body was recovered, that's in Columbus, Muscogee County?"  The officer answered, "Yes, sir." Rouse never contested that testimony or challenged venue in any way.

As recently as 2006, this Court unanimously held the following with respect to OCGA § 17-8-57:

> *Courts of this State have always recognized . . . that a statement by a trial court concerning a fact that is uncontested or is not in dispute does not constitute a violation of this statute.*  In <u>Brown v. State</u>, for example, the trial court questioned a witness regarding the photographic lineup that had been presented to the victim, and, in doing so, intimated its opinion that the lineup was not unduly suggestive. [251 Ga. App. 343, 345 (554 SE2d 321) (2001).]  The Court of Appeals affirmed the conviction, however, because the defendant never claimed that the lineup was suggestive. Thus, the trial court's comments did not require a new trial. [Id.]

19

Sauerwein v. State, 280 Ga. 438, 439 (629 SE2d 235) (2006) (emphasis added; footnotes deleted). In support of this proposition, the Court cited the following series of Georgia appellate decisions going back to 1860:

> See, e.g., Johnson v. State, 30 Ga. 426, 431(5) (1860) (not error to state a fact that is undisputed by the defense); McCloud v. State, 166 Ga. 436, 444 (143 SE 558) (1928) ("[w]hile the judge is forbidden to express an opinion as to whether any particular fact has been proved, yet, when the evidence to establish a fact is undisputed, and the fact is admitted by the accused on his trial, it is not error for the judge to [state that fact] to the jury"); Thomas v. State, 27 Ga. App. 38, 40 (3) (107 SE 418) (1921) (the statute "which prohibits a trial judge from expressing or intimating his opinion as to what has or has not been proved 'refers to the expression or intimation of an opinion touching some fact at issue in the case, and not to something that is conceded by both parties'"); McKee v. State, 275 Ga. App. 646, 650 (621 SE2d 611) (2005) (trial court's comment on undisputed fact was not a violation of the statute).

Sauerwein, 280 Ga. at 439 n.6. There are many additional cases that could also be cited for this proposition.

More recent decisions, however, particularly those involving alleged comments about venue, appear to disregard this longstanding interpretation of § 17-8-57. Thus, it has been said that "venue is challenged whenever a criminal defendant pleads not guilty to the charges in the indictment." Byrd v. State, 307 Ga. App. 589, 590-591 (705 SE2d 690) (2013) (citing Jones v. State, 272 Ga.

900, 901-902 (537 SE2d 80) (2000), and Patel, 282 Ga. at 414).  This statement

is true with respect to the State's burden at trial to *prove* the jurisdictional fact

of venue by more than "slight evidence" – which was the issue in Jones.  Indeed,

the defendant's not guilty plea requires the State to prove *every* fact material to

the case, because the State has the *complete* burden of proof in a criminal case

and the defendant need not prove anything.[2]

---

[2]The majority opinion repeatedly calls venue a "critical element" of the State's case.  It is important to recognize, however, that venue is *not* an "essential element" of the crimes charged.  If it were, then the Double Jeopardy Clause would bar retrial in cases where the State failed to present sufficient evidence of venue at the original trial.  See Burks v. United States, 437 U.S. 1, 10-11 (98 SCt 2141, 57 LE2d 1) (1978).  This Court has correctly held, however, that venue is not a matter of substantive criminal law – of the guilt or innocence of the accused – but rather a matter of criminal procedure:

> A reversal for improper venue is not a factual determination concerning the sufficiency or insufficiency of evidence that a defendant committed a criminal act.  Rather, it is a reversal due to insufficient evidence to support conducting a trial in a particular court's domain.  As such, it is more a procedural matter than anything else.

Jones v. State, 272 Ga. 900, 905 (537 SE2d 80) (2000).  Accordingly, venue is properly understood as merely a "jurisdictional fact" that the State must prove to establish that the case is being prosecuted in the right place.  See, e.g., Bulloch v. State, 293 Ga. 179, 187 (744 SE2d 763) (2013).  See also Jones, 272 Ga. at 901 (referring to venue as a "jurisdictional fact," although referring in the same sentence to venue as "an essential element in proving that one is guilty of the crime charged" – contrary to the Court's double jeopardy discussion later in the same opinion).

Indeed, while both our federal and state constitutions require proper venue in criminal cases, see U.S. Const. amend. VI; Ga. Const. of 1983, Art. VI, Sec. II, Par. VI, federal law requires that the prosecution prove proper venue by only a preponderance of the evidence, which would not be permissible if venue were an essential element of a crime.  See, e.g., United States v. De La Cruz Suarez, 601 F3d 1202, 1217 (11th Cir. 2010); Wilkett v. United States, 655 F2d 1007, 1011 (10th Cir. 1981).  Many states take the same view.  See generally Comment Note, Necessity of Proving Venue or Territorial Jurisdiction of Criminal Offense Beyond Reasonable Doubt, 67 ALR3d 988, § 8 (collecting cases).  This Court has held many times that, "'[l]ike every other material allegation in the indictment, [venue] must be proved [by the prosecution] beyond a reasonable doubt,'" Jones,

But this is not what was meant by "contested" or "disputed" in the cases applying § 17-8-57, or at least in Sauerwein and the more than a century of precedents on which it relied. To make a judge's comment on a fact come within the statute, it is not enough that the defendant merely pleaded not guilty. If at trial the State offers evidence of a fact sufficient to prove it, and the defendant does nothing to dispute that evidence, then under Sauerwein and other precedents, a statement by the court about that fact does not require reversal under § 17-8-57. This is true even in cases where the defendant has not formally stipulated to the fact or affirmatively admitted the fact during the trial. See, e.g., McCloud, 166 Ga. at 444-445 (holding that the trial court did not err in charging the jury that the defendant was in the custody of the victim officer when he shot and killed the officer, due to the "undisputed evidence" presented at trial, including the defendant's *pre-trial* statement to police admitting that fact); Taylor v. State, 135 Ga. 622, 625-626 (70 SE 237) (1911) (concluding that

---

272 Ga. at 901 (citation omitted), but it is not clear whether this *standard* of proof comes from the Constitution or the common law, especially when it is recognized that venue is not a substantive element of crimes. The Georgia rule traces back to this Court's decision in Gosha v. State, 56 Ga. 36 (1876), which held that "[t]he venue of a crime must established clearly and beyond all reasonable doubt." Id. at 36 hn.2. But Gosha did not explain the reason for that rule or cite any authority, and the Gosha Court notably also based its decision to grant a new trial on the highly offensive view that "the colored population of our state, . . . owing to their ignorance, as a general rule, should have justice administered to them tempered with much mercy." Id. at 37.

22

it was not error for the trial court to express its opinion that the victim was killed by an unlawful homicide because the undisputed evidence proved that fact and the defendant, who offered an alibi defense, referred to the victim's death as a "killing" in his statement to the jury).

"'It is not a violation of the statute which prevents a trial judge of the superior court from expressing an opinion as to what facts have been proved, where a fact stated by the trial judge as having been proved is established by uncontradicted testimony.'" Sauerwein, 280 Ga. at 440 (quoting Rentz v. Collins, 51 Ga. App. 782, 783 (181 SE 678) (1935)). That is precisely the situation in this case (assuming that the trial court's challenged remark can even be deemed an opinion as to a fact having been proved). Notably, the issue of venue *was* disputed in Patel, the case that seems to have started us down the path away from Sauerwein. See Patel, 282 Ga. at 414-415 (holding that the § 17-8-57 violation occurred when the court interrupted defense counsel's opening statement, which was apparently trying to raise a venue defense based on an interpretation of where venue is properly laid for charges of on-line solicitation

and obscene contacts).[3]

The traditional interpretation of OCGA § 17-8-57 discussed and applied in Sauerwein has much to commend it. Limiting § 17-8-57 violations to judicial expressions of opinion about matters that the defendant actually contests or disputes in some way during the trial prevents the statute from working injustices by requiring the automatic reversal of convictions where it is

---

[3]In our first venue-related § 17-8-57 case after Patel, we said:

> The Court of Appeals correctly stated that in order to violate OCGA § 17-8-57, the trial court's comments must pertain to a disputed issue of fact. [citations omitted]. Assuming, arguendo, that the issue of venue was disputed in this case,[footnote 3] we hold that the trial court did not violate OCGA § 17-8-57.

State v. Gardner, 286 Ga. 633, 634-635 (690 SE2d 164) (2010). That statement was consistent with Sauerwein and prior precedent. However, in footnote 3, which was entirely dicta, we asserted, based on Patel, that Gardner's plea of not guilty constituted a challenge to the allegation of venue in the indictment; noted that during the final jury charge the court stated, with agreement from counsel for both parties, that "the only uncontested matter in this case is that venue properly lies in Muscogee County"; and then said that "[t]he record does not establish the point at which venue became uncontested, i.e., whether it occurred before or after the [court's] exchange regarding venue at issue here." This dicta appears misguided in several respects, including in its suggestion that it is necessary to determine if the fact "became undisputed" before the court made the comment at issue. That proposition was not supported by citation of any authority; the precedents involving judicial comments on undisputed facts do not engage in this "timing" analysis; and applying it could create bizarre results, like convictions being reversed or affirmed based entirely on whether the judge said something about a fact in the sentence before or the sentence after the parties stipulated to the fact. Notably, if defense counsel had contemporaneously objected to the court's statement in Gardner, the parties would have had the opportunity to clarify at that point whether the issue was or would be disputed. Despite its dubious foundation, Gardner's timing analysis has been treated as dispositive by the Court of Appeals. See Byrd, 307 Ga. App. at 591-592 (reversing a conviction because the trial court expressed an opinion on proof of venue during the questioning of a witness, even though the parties later expressly stipulated to venue and the court accordingly instructed the jury that "You will take as proven without any further evidence that the events that are alleged in the bill of indictment occurred in Taylor County, Georgia").

24

undeniable that whatever the court said about the matter had no effect on the verdict. To put this concept in the language of the statute, a judge does not express an *opinion* – a "belief based on grounds short of proof"[4] – as to what has or has not been proved, when the judge's statement involves a fact as to which the State has presented proof that the defendant does not dispute; in this situation, the judge is simply expressing a *fact*.

But even if we do not go back to the Sauerwein approach in deciding this case, or if we try as the majority does to carve out an exception for judicial comments on the jurisdictional fact of venue, see Maj. Op. at 7 n.2, whether the defendant disputed the fact in question during the trial is – at a minimum – *relevant* to how reasonable jurors would perceive the judge's challenged statement about that issue. If the judge weighs in even obliquely on a fact that the parties are disputing, it is more likely that the jurors will take account of the judge's statement to help them resolve the dispute; but if the judge makes an equivocal comment about a point that the defense *never contests*, it is much less likely that the jury will take the comment as an "opinion" on what has been proved or not proved.

---

[4]The Oxford Dictionary of Current English 514 (1985) (emphasis added).

25

### *(f)     Conclusion.*

In the full context of the trial of this case, reasonable jurors would not have interpreted the trial court's now-challenged comment as an expression of "opinion as to what has or has not been proved" forbidden by OCGA § 17-8-57. The jury would have understood the passing remark as it was intended – as a prefatory statement outlining the type of controversy – the "case" – they would be "hearing about." The court made it crystal clear that the jurors would have to decide the case based only on the evidence that the parties would later present, and when that evidence was presented and the parties made their opening statements and closing arguments, the proof of venue was plainly sufficient and entirely undisputed. It appears that Rouse's trial counsel did not interpret the court's remark as improper, nor did his appellate counsel raise the claim during the motion for new trial proceedings. From all appearances, only when hunting for *something* non-frivolous to appeal did the same appellate counsel spot a few words in a preliminary instruction which, when plucked out of context, could be argued to comprise an improper judicial comment on venue – even though a (marginally) better argument could be made that the court improperly commented by saying that this was a "murder case" in the same

26

passage. It is disappointing that the majority opinion endorses this non-contextual approach to § 17-8-57, and reverses convictions that were, the record demonstrates, the result of a full and fair trial.

Worse yet, by reversing in this case, the majority opinion takes OCGA § 17-8-57 beyond its scope under 150 years of precedent – well beyond our decisions in Patel and Anderson, which are distinguishable on multiple grounds as shown above. The majority opinion opens the door for defendants who were convicted after fair trials to scour transcripts of even the most preliminary of instructions to the venire for any judicial reference to their "case" along with a modifier relating to a disputed – or even an undisputed – fact, hoping that the court failed to throw in an explicit "allegedly." And even though no one objected when such a reference was made – because no reasonable person would understand the reference to be the expression of the court's "opinion as to what has or has not proved" – this Court (and the Court of Appeals) will presumably need to reverse those convictions too, if we are to be true to today's novel precedent. If this is how our Court is going to apply § 17-8-57, then it is time for the General Assembly to consider amending the statute to eliminate its unusual super-plain-error remedial language, so that convictions will be

27

reversed based on trial judges' comments only where the comments caused some actual prejudice to the defendant.

### 2. The General Assembly Should Consider Repealing the Second Sentence of OCGA § 17-8-57.

In considering whether OCGA § 17-8-57 should be amended, the first important point to recognize is that our statute does not implement a *constitutional* requirement against judges commenting on the evidence, only *policies* established by the General Assembly and thus open to alteration by that same body. There is a constitutional rule against *coercive* jury instructions, see Lowenfield v. Phelps, 484 U.S. 231, 241 (108 SCt 546, 98 LE2d 568) (1988), but no established constitutional or common-law rule prohibits "the traditional practice of judicial comment on the evidence." Wong v. Smith, ___ U.S. ___ (131 SCt 10, 11, 178 LE2d 403) (2010) (Alito, J., dissenting from denial of certiorari). To the contrary,

> For centuries, trial judges have enjoyed authority to comment on the evidence. At common law, the judge was empowered to "weig[h] the evidence" and share an "opinion" with the jury, even "in matter of fact." The practice is well established in [the U.S. Supreme] Court's cases as well. The Court has recognized that a trial judge has "discretion" to "comment upon the evidence," to call the jury's "attention to parts of it which he thinks important," and to "express his opinion upon the facts." To be sure, the practice has for many

28

> years been on the wane. Comment on the evidence has always been more popular in Britain than it ever was in this country. That said, federal courts and several States continue to recognize judicial authority to comment on the evidence, and California expressly protects the practice in its State Constitution.

Id. (footnote and citations omitted).

Colonial and subsequent democratic sentiment favored weakening the role of judges, and over the years many states, including Georgia, have sought legislatively to curb judicial power, including by prohibiting trial judges from commenting on the evidence. See Jack B. Weinstein, The Power and Duty of Federal Judges to Marshall and Comment on the Evidence in Jury Trials and Some Suggestions on Charging Juries, 118 FRD 161, 164-165 (1988) (summarizing the history of judicial summary of and comment on the evidence in England and America). As of 1988, 37 states, including Georgia, prohibited judicial comment on the evidence, and even in the federal and state jurisdictions where such comment is permitted, it is rarely done. See id. at 169. Thus, while arguments can be made in favor of the traditional approach, see id. at 166-167, there is no compelling reason to alter Georgia's longstanding policy against judicial comment on the evidence; the policy now incorporated in the *first* sentence of OCGA § 17-8-57 serves to protect the jury's constitutional province

29

as the finder of fact in criminal cases.  See Ga. Const. of 1983, Art. I, Sec. I, Par. XI; <u>Ford v. State</u>, 2 Ga. App. 834, 838 (59 SE 88) (1907) ("It is always wiser, safer, better, and juster that trial judges should confine themselves exclusively to an enunciation of the law, leaving to counsel the duty of elucidating the facts, and to juries the finding of the truth in the evidence.").

The *second* sentence of § 17-8-57 – the remedial provision – is a different matter, especially if this Court interprets the prohibitory scope of the statute as expansively as the majority opinion does in this case.  The remedial sentence says:

> Should any judge violate this Code section, the violation shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below with such directions as the Supreme Court or Court of Appeals may lawfully give.

We have held that this provision requires a highly unusual, "super-plain-error" form of appellate review of alleged violations of § 17-8-57: "not only may they be raised on appeal without any objection at trial, but, if sustained, they automatically result in reversal without consideration of whether the error caused any actual prejudice."  <u>Wells</u>, 295 Ga. at 167.  As discussed next, there are good reasons for the General Assembly to reconsider whether this

30

extraordinarily defendant-friendly form of review is appropriate, and to eliminate at least the automatic-reversal aspect of § 17-8-57.

### (a)    Plain-Error Review.

It is not clear why this Court has, in recent years, endorsed "plain error" review of alleged violations of OCGA § 17-8-57 – allowing defendants to raise such claims for the first time on appeal, without objecting contemporaneously to the alleged violation when it occurred at trial.

> The contemporaneous objection rule has long been a mainstay of Georgia trial practice.  See, e.g., Goodtitle v. Roe, 20 Ga. 135 (4) (1856); Burtine v. State, 18 Ga. 534 (1) (1855).  That rule provides that, "in order to preserve a point of error for the consideration of an appellate court, counsel must take exception to the alleged error at the earliest possible opportunity in the progress of the case by a proper objection made a part of the record."

Sharpe v. Dept. of Transp., 267 Ga. 267, 267 (476 SE2d 722) (1996) (citation omitted).   The rule is applied to claims of trial error in both civil and criminal cases. See, e.g., id.; Johnson v. State, 292 Ga. 785, 787 (741 SE2d 627) (2013).  Under this rule, failure to make a contemporaneous objection at trial waives appellate review of the claim.  See id. at 787-788.

For many years, this Court applied the contemporaneous objection rule to alleged violations of the predecessor statutes to § 17-8-57.  Indeed, in Pulliam

31

v. State, 196 Ga. 782 (28 SE2d 139) (1943), the Court squarely addressed the issue and held that a complaint that the trial court expressed an opinion on the guilt of the accused or on what has or has not been proved could not be raised for the first time in a motion for new trial (much less on appeal), overruling cases that had held to the contrary. See id. at 790-791. Pulliam was the law in Georgia for more than a half-century, and on its authority many alleged violations of § 17-8-57 were deemed waived, including at least one claim involving a judge's blatant comment on proof of venue. See Shepherd v. State, 203 Ga. 635, 636 (47 SE2d 860) (1948) (holding that, where no motion for mistrial was made when the trial judge interrupted the questioning of a witness being asked whether the crime was committed in Bartow County to say, "Already proved it was in Bartow County," the claim was waived and could not be first raised in a motion for new trial). See also Archie v. State, 248 Ga. App. 56, 57 & n.3 (545 SE2d 179) (2001) (citing numerous cases applying waiver to § 17-8-57 claims and noting that in State v. Griffin, 240 Ga. 470, 470 (241 SE2d 230) (1978), this Court had granted certiorari to reiterate that "[t]he question of whether [what is now § 17-8-57] has been violated is not reached [on appeal] unless an objection or motion for mistrial is made [at trial]").

In 2000, however, this Court, after recognizing that "we have repeatedly held that such an error [under § 17-8-57] is waived in the absence of an objection or a motion for a mistrial," decreed that "[w]e believe the plain error rule should be applied to cases of this kind." Paul v. State, 272 Ga. 845, 848 (537 SE2d 58) (2000). See also Ledford v. State, 289 Ga. 70, 85 (709 SE2d 239) (2011) (recognizing that Paul and subsequent cases had disapproved the prior cases holding that appellate review of an alleged § 17-8-57 violation is waived unless an objection or motion for mistrial is made on that ground at trial); Archie, 248 Ga. App. at 57 (stating that Paul "announced a new rule of law"). Paul offered little reasoning for this dramatic departure from well-established precedent, saying only that the Court had *not* previously adopted a plain error rule in non-death penalty cases, although the Court of Appeals had in one case, and that "this Court has weighed facts against the plain error rule even where it has said that the plain error rule does not apply," as if assuming that a legal rule exists and finding that it has not been violated qualifies as precedent for adopting that rule. Paul, 272 Ga. at 848.

In particular, Paul identified no language in § 17-8-57 that displaces the traditional contemporaneous-objection requirement; indeed, the General

33

Assembly had never changed the statutory text in reaction to the many appellate decisions over many decades holding that the contemporaneous-objection rule applied to claims under this statute. The absence of an explicit textual basis for plain-error review stood in contrast to the only other situation to that point in which the Court had engaged in such review. See Hicks v. State, 256 Ga. 715, 730 (352 SE2d 762) (1987) (explaining that this Court reviews claims related to the imposition of a death sentence, even without a timely objection at trial, based on OCGA § 17-10-35 (c) (1), which says that the Supreme Court "shall determine . . . [w]hether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor").

Since Paul, when the General Assembly has wanted to authorize plain-error review, it has again included specific language in the applicable statute. See OCGA § 17-8-58 (b) (effective July 1, 2007) ("Failure to object [to a jury instruction] in accordance with subsection (a) of this Code section shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties. Such plain error may be considered on appeal even if it was not brought to the court's attention as provided in subsection (a) of this Code section."); OCGA §

24-1-103 (d) (effective Jan. 1, 2013) ("Nothing in this Code section [requiring a timely objection to evidentiary rulings] shall preclude a court from taking notice of plain errors affecting substantial rights although such errors were not brought to the attention of the court."). Moreover, the Court of Appeals has continued to apply the usual waiver doctrine to alleged violations of OCGA § 9-10-7, the civil analogue of § 17-8-57, which contains an identical remedial sentence. See, e.g., Mahsa, Inc. v. Al–Madinah Petroleum, Inc., 276 Ga. App. 890, 894 (625 SE2d 37) (2005) ("[T]he question of whether OCGA § 9-10-7 has been violated is not reached unless an objection or motion for mistrial is made.").

It may well be that plain-error review of alleged violations of OCGA § 17-8-57 is appropriate as a matter of policy. The argument can be made that the trial court's improper expression to the jury of its opinion on the facts is similar to the court's improper charge to the jury on the law, for which § 17-8-58 (b) now authorizes plain-error review. The argument can also be made, however, that the contemporaneous-objection rule applies to bar appellate review even of alleged constitutional violations, and there is no need to exclude this sort of statutory violation from its reach. For present purposes, the important points are

first, that this policy decision should be made expressly by the General Assembly, and second, that as the history of decisions from this Court demonstrates, plain-error review of alleged § 17-8-57 violations is not *required*.

### (b) *Automatic Reversal.*

Unlike the plain-error aspect of our appellate review of § 17-8-57 violations, our cases have consistently held that, when an appellate court determines that the statute has been violated, the only remedy is reversal and a new trial, given the statutory language mandating that a violation "shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below." See, e.g., Sauerwein, 280 Ga. at 439. And even without the statutory requirement, it might make sense to presume prejudice when a judge violates § 17-8-57 by expressing an opinion "as to the *guilt* of the accused," as judicial intrusion into that ultimate question for the jury in a criminal case could be viewed as a "structural" error not susceptible to harmless-error review – as a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." Arizona v. Fulminante, 499 U.S. 279, 310 (111 SCt 1246, 113 LE2d 302) (1991). See also Berry v. State, 282 Ga. 376, 378 (651 SE2d 1) (2007)

36

(describing structural error in the same way); 2A Charles Alan Moore & Peter J. Henning, Fed. Prac. & Proc. Crim. § 488 (4th ed. 2014) ("[E]ven though the jury is advised that the question is ultimately for them, the expression by the judge that he thinks defendant guilty will call for reversal in a disputed case.").

It is truly exceptional, however, to exclude judicial errors involving trial *evidence* from harmless-error review. With regard to the evidence in criminal cases, trial courts regularly violate the sort of non-constitutional policies incorporated in OCGA § 17-8-57 and other statutes and precedents, including the many provisions of the Evidence Code and the many cases interpreting that code. Such errors are routinely subject to harmless-error review; "'[t]he test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict.'" Rivera v. State, 295 Ga. 380, 382 (761 SE2d 30) (2014) (citation omitted). Harmless-error review also extends to a wide array of evidence-related violations of the federal and state constitutions – including such serious errors as the admission of an involuntary confession and incorrect jury instructions about how to consider the evidence, see Fulminante, 499 U.S. at 306-307, 310 – although a more stringent test is applied: the reviewing court must determine that the constitutional error was

harmless beyond a reasonable doubt. See, e.g., <u>Ardis v. State</u>, 290 Ga. 58, 62 (718 SE2d 526) (2011) (involving a violation of the Confrontation Clause).

For the reasons discussed in Division 1 above, it would be a straightforward matter to apply nonconstitutional harmless error analysis to the trial court's alleged violation of OCGA § 17-8-57 in this case (and in similar cases). It is highly probable – indeed, I am quite certain – that the trial court's now-challenged remark did not contribute to the jury's guilty verdicts, because the State readily proved that the crimes occurred in Muscogee County, the defense never disputed that proof, and Rouse otherwise received a fair trial. Why should we have an automatic-reversal rule when a trial court improperly expresses its opinion on whether the evidence has or has not proved a fact, when we do not have such a rule when the court improperly admits or excludes the evidence that is actually needed to prove that fact? I see no good reason to retain the unusual automatic-reversal language of OCGA § 17-8-57. Indeed, the injustice of reversing a criminal conviction solely because the trial court expressed an opinion on an undisputed fact – the situation in which a violation of § 17-8-57 is most conspicuously harmless – may explain why this Court and the Court of Appeals, in <u>Sauerwein</u> and many cases before it, avoided the

38

implications of the second sentence of § 17-8-57 by reading the first sentence of the statute as not applying to judicial comments on uncontested facts. See Division 1 (e) above.

For these reasons, I dissent, and I urge the General Assembly to consider repealing the second sentence of OCGA § 17-8-57. I am authorized to state that Presiding Justice Hines and Justice Blackwell join in this dissent.